491 So.2d 293 (1986)
FIRST OVERSEAS INVESTMENT CORP., d/b/a Monte Carlo Hotel, Puritan Insurance Company and Insurance Company of the State of Pennsylvania, Appellants,
v.
Ola Ann COTTON and Levornia Jean Cotton, As the Co-Executrixes of the Estate of Cleophus Cotton, Appellees.
No. 85-451.
District Court of Appeal of Florida, Third District.
July 1, 1986.
Rehearing Denied August 4, 1986.
Merritt, Sikes & Craig, Miami, Richard A. Sherman, Ft. Lauderdale, Lanza, Sevier, Womack & O'Connor and Stephen E. Tunstall, Coral Gables, for appellants.
Abrams, Anton, Robbins, Resnick, Schneider & Mager, Hollywood, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel D. Eaton, Miami, for appellees.
Before HENDRY, BASKIN and JORGENSON, JJ.
*294 HENDRY, Judge.
Defendants First Overseas Investment Corp. d/b/a Monte Carlo Hotel and its insurers appeal a final judgment in favor of plaintiffs Ola Ann Cotton and Levornia Jean Cotton, Co-Executrixes of the Estate of Cleophus Cotton, on behalf of the Estate and on behalf of Ola Ann Cotton, as surviving spouse of the decedent, in plaintiffs' action for wrongful death. Defendants also appeal a final judgment taxing costs in plaintiffs' favor.
At trial the following testimony was adduced. Cleophus Cotton and his wife were guests at the Monte Carlo Hotel (hotel). Mr. Cotton went swimming in the shallow end of the hotel pool. The pool water was extremely cloudy as the pool attendant had that morning dumped a bucketful of soda ash into it to "sweeten" the PH. The pool attendant testified that the pool's soda ash feeder was inoperable, hence his practice of dumping the soda ash directly into the pool. Expert testimony was offered that soda ash should never be dumped directly into a pool and that a bucketful was ten to twelve times more than is needed. Soda ash increases turbidity and makes the water cloudy until completely filtered. The pool attendant testified that he had no training in first aid or in the use of lifesaving apparatus. He further testified that the pool's filtration system was inoperable. The pool did not have lifesaving apparatus such as a shepherd's hook, an elevated lifeguard's chair, or first aid equipment.
Michael Wolfe testified that he observed Mr. Cotton swimming in the shallow end of the pool. Mr. Wolfe turned away from the pool for about 60 seconds and when he looked back, Mr. Cotton was gone. Mr. Wolfe went to the side of the pool and looked for Mr. Cotton, but did not see him. He asked another hotel guest, Daniel Jones, if he had seen Mr. Cotton. Mr. Jones indicated that he had not seen him. Mr. Wolfe told the pool attendant that he thought Mr. Cotton was in the pool. The pool attendant and Mr. Wolfe stood at the edge of the pool and looked for Mr. Cotton, but still did not see him. Subsequently, Mr. Wolfe and Mr. Jones began swimming the length of the pool at the bottom, looking for Mr. Cotton. They testified that they did not find Mr. Cotton on the bottom until they were practically on top of him. They then brought him up to the side of the pool. Mr. Jones ran down the beach to get a lifeguard. A lifeguard was located by Mr. Jones. The lifeguard attempted to resuscitate Mr. Cotton, but his efforts were unsuccessful, as were the efforts of a fire rescue squad which arrived at the scene shortly after the lifeguard.
Mr. Wolfe testified that twelve to twenty minutes elapsed between the time he first started looking for Mr. Cotton and the time resuscitation efforts were first made. According to expert testimony, there was a high probability of Mr. Cotton's survival if he had been rescued within four to five minutes after disappearing. It was plaintiffs' contention that Mr. Cotton would have been rescued within four to five minutes and would not have drowned if the hotel had complied with the following Florida Department of Health and Rehabilitative Services (HRS) rules:
Rule 10D-5.66(3)
All items of equipment designed for recirculation, filtration, disinfection, and pool water treatment, shall be kept in service at all times and shall be properly maintained to perform the functions of the units and protect the swimming pool water from contamination.
Rule 10D-5.68(6)
Clearness  At all times the pool water shall be sufficiently clear so that the main drain or drains are clearly defined when viewed from the pool deck.
Rule 10D-5.81(1)
All owners, managers, and/or other attendants in charge of a public swimming pool shall be responsible for supervision and safety of the pool. The attendant, if provided, shall be in full charge of bathing, shall have authority to enforce all rules, and shall be trained in first aid and the use of lifesaving apparatus.

*295 Rule 10D.5.81(2)
Lifesaving apparatus  All swimming pools shall be provided with a shepherd's hook securely attached to a one piece pole not less than sixteen (16) feet in length, and at least one (1) eighteen (18) inch diameter lifesaving ring with sufficient rope attached to reach all parts of the pool from the pool deck. Lifesaving apparatus shall be mounted in a conspicuous place and be readily available for use. Pools greater than fifty (50) feet in length shall have multiple units with at least one (1) shepherd's hook and one (1) lifesaving ring located along each of the longer sides of the pool.
Rule 10D-5.81(3)
Lifeguard chairs  One elevated lifeguard chair of [sic] platform shall be provided for pools having over two thousand (2,000) square feet up to four thousand (4,000) square feet of pool water surface area. One additional lifeguard chair or platform shall be provided for each two thousand (2,000) square feet, or major fraction thereof, of pool water surface area above four thousand (4,000) square feet. The lifeguard chair(s) or platform(s) shall be located to allow a clear and unobstructed view of the pool bottom in the area of surveillance.
Rule 10D-5.81(6)
First aid equipment and materials  Each pool shall have available first aid equipment and materials sufficient for use in connection with injuries which may occur in the pool or on the pool deck.
Plaintiffs contended that Mr. Cotton would not have drowned if the pool's filtration system had been operating properly; the water in the pool had been clear; an elevated lifeguard chair had been in place affording a clear and unobstructed view of the pool; there had been lifesaving apparatus and first aid equipment available; and the pool attendant had been trained in the use of lifesaving apparatus and first aid.
Plaintiffs offered the six HRS rules into evidence. Defendants objected and the trial court overruled their objection. At the jury charge conference, plaintiffs requested a negligence per se instruction with regard to the violation of the six HRS rules. Defendants objected to such instruction. The trial court overruled their objection and instructed the jury that "[v]iolations of the regulations of the Department of Health and Rehabilitative Services [are] neglience."
The jury found the hotel negligent and awarded damages to plaintiffs. A final judgment was entered pursuant to the verdict and a second final judgment was also entered taxing costs in plaintiffs' favor.
The primary contention raised by defendants on appeal is that the trial court erred in giving a negligence per se instruction with regard to the violation of the six HRS rules. We disagree.
The well established rule is that it is "negligence per se" for a defendant to violate a statute which establishes a duty to protect a particular class of persons from a particular type of injury. deJesus v. Seaboard Coast Line Railroad Co., 281 So.2d 198 (Fla. 1973); Grand Union Co. v. Rocker, 454 So.2d 14 (Fla. 3d DCA 1984); Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978). This applies to violations of HRS rules as well. H.K. Corp. v. Estate of Miller, 405 So.2d 218 (Fla. 3d DCA 1981). We find that all of the HRS rules at issue obligated the hotel to protect a particular class of persons (guests using the pool), from a particular type of harm (drowning). All of the rules were designed to ensure a clear view of swimmers in distress and/or the capability of saving them from drowning. This is consistent with our holding in H.K. Corp. v. Estate of Miller, that the violation of an HRS rule prescribing minimum water depths for diving boards at public swimming pools was negligence per se. We found in H.K. Corp., 405 So.2d at 219, that the rule "obligated the hotel to protect a particular class of persons (swimming pool divers), from a particular type of harm (hitting the bottom of the pool)." Cf. Kelly v. Koppers Co., 293 So.2d 763 (Fla. 3d DCA) (HRS rule requiring floors and walls *296 of swimming pools to be light in color was promulgated for purposes of sanitation, health and cleanliness, and not for safety purposes), cert. denied, 302 So.2d 415 (Fla. 1974). Therefore, we find the trial court did not err in instructing the jury that violations of the HRS rules were negligence per se.
We have considered the remaining issues raised by defendants and find them to be without merit.
For the foregoing reasons and based upon the authorities cited, the final judgments appealed are affirmed.
Affirmed.