498 So.2d 455 (1986)
Joshua LaTORRE, a Minor, by and through His Parents and Next Best Friends, Joseph LaTORRE and Wanda LaTorre, Individually, Appellants,
v.
FIRST BAPTIST CHURCH OF OJUS, INC., a Florida Corporation Not for Profit, Appellee.
No. 85-556.
District Court of Appeal of Florida, Third District.
August 5, 1986.
John M. Bernazzoli (Hollywood), for appellants.
Ress, Gomez, Rosenberg, Howland & Mintz and Steven A. Edelstein, for appellee.
Before SCHWARTZ, C.J., and HUBBART and DANIEL S. PEARSON, JJ.
*456 DANIEL S. PEARSON, Judge.
Joshua LaTorre was not yet a year and one-half old when he was bitten by ants in the outside play area of a child care center run by the First Baptist Church of Ojus, Inc. His parents, on their own behalf and his, sued the church, alleging that its negligence had resulted in Joshua's having assorted physical, mental and emotional problems since the incident. A jury returned a verdict for the church, and the LaTorres take this appeal from the judgment entered thereon.
The LaTorres raise two points that merit discussion. They contend that the trial court erred, first, in refusing to instruct the jury, as the plaintiffs requested, as to the violation of certain Department of Health and Rehabilitative Services (HRS) regulations governing day care centers which constituted negligence per se; and second, in refusing to allow the plaintiffs to introduce the deposition testimony of a director of the defendant corporation. We agree with the LaTorres that the trial court erred in each of these respects and reverse and remand for a new trial.[1]
The plaintiffs' theory of liability was based in substantial part on the church's alleged violation of several sections of the Department of Health and Rehabilitative Services Child Care Standards. Among these sections were one dealing with the duty to keep the outdoor play area clean and free of obvious hazards[2] and one dealing with the duty to provide a minimum amount of usable, safe, and sanitary outdoor play space.[3] In support of their theory, the plaintiffs presented evidence to show that each of these regulations was violated.
At the charge conference, the plaintiffs requested instructions on the issue of negligence per se, tracking the language of the HRS regulations upon which their case was based. Significantly, their request that the jury be instructed about the requirement that the defendant provide a minimum area of usable, safe, and sanitary space was denied.
It is well settled that a party is entitled to have the court instruct the jury on his theory of the case where the evidence, even though controverted, supports the theory. Ryder Truck Rental, Inc. v. Johnson, 466 So.2d 1240 (Fla. 1st DCA 1985); Gallagher v. Federal Insurance Co., 346 So.2d 95 (Fla. 3d DCA), cert. denied, 354 So.2d 980 (Fla. 1977); Menard v. O'Malley, 327 So.2d 905 (Fla.3d DCA 1976). However, in determining whether failure to give a certain instruction constitutes error, we are required to consider the jury instructions as a whole along with, in the appropriate case, the verdict form. Gallagher v. Federal Insurance Co., 346 So.2d at 97. Where the essence of the instruction is included in other charges given or where the failure to give requested instructions is not shown to be prejudicial, we need not reverse. Llompart v. La Vecchia, 374 So.2d 77 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 758 (Fla. 1980). Ultimately, the decision turns on whether the record reveals that the jury was misled by failure to give the instruction. Orange Belt Auto Line v. Harford, 91 Fla. 1011, 109 So. 201 (1926); Gallagher v. Federal Insurance Co., 346 So.2d 95.
Applying these principles to the case before us, we conclude that the jury should have been instructed as requested by the plaintiffs, and that the instructions as given did not remedy the omission of an *457 instruction on the day care center's obligation to provide a minimum amount of usable, safe, and sanitary space. The plaintiffs theorized, and tailored their instructions and verdict form to make clear to the jury, that a violation of any one of the regulations constituted negligence. They distinguished throughout the case between the requirement that the play area be clean and free of litter and obvious hazards and the entirely separate requirement that the area contain a minimum amount of usable, safe, and sanitary space. Although these requirements manifestly differ,[4] the trial court, being of the view that the instruction about keeping the play area free from obvious hazards was sufficient to cover the separate requirement that usable, safe, and sanitary space be provided, gave the former instruction only.
Thus, the instructions as given failed to include one of the bases for liability upon which the plaintiffs had presented evidence.[5] While a jury could have concluded that the ants were not an obvious hazard, if properly instructed it could also have concluded that the hidden presence of the ants in the play yard would render that space unusable, unsafe, and unsanitary.[6] Moreover, our reading of the charge as given combined with the undifferentiated verdict leads us to conclude that the jury may well have been misled into believing that in order to find the church negligent, it was necessary to find that it had violated all of the HRS child-care standards upon which it was instructed. Although the trial court correctly instructed the jury that a violation of the HRS regulations governing the child care center constituted negligence per se, see First Overseas Investment Corp. v. Cotton, 491 So.2d 293 (Fla. 3d DCA 1986); see also deJesus v. Seaboard Coast Line Railroad Co., 281 So.2d 198 (Fla. 1973) (violation of statute designed to protect particular class of persons unable to protect selves or to protect particular class of persons from particular injury or type of injury is negligence per se); Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978) (violation of administrative regulation establishing same duty is negligence per se), no part of the instructions as given made clear to the jury that, if it found a failure to comply with any one of the HRS requirements, a finding of negligence was mandatory.
We turn now to the second point upon which we base this reversal. James Atwell, indisputably a director of the defendant corporation and directly responsible for the building and grounds as chairman of a committee so named and as a person actually attending to the maintenance of the play area, had testified during a pretrial deposition that whenever ants appeared in the play yard, he or another committee member would pour some chemical on them to eliminate them. The trial court refused to allow the plaintiffs' counsel to read into evidence Atwell's deposition and required him to call Atwell as a witness, albeit an adverse one, if he wanted Atwell's testimony in the case. So compelled, plaintiffs' counsel called Atwell as a *458 live witness. Atwell admitted to being a member of the defendant's board of directors, refused to characterize himself as being responsible for lawn care or extermination, and denied having seen ants in the play yard before the day in question. While it is true that Atwell's testimony was subject to being impeached, and was to some extent impeached by his prior inconsistent statements made during his deposition, the fact remains that the plaintiffs were entitled to use Atwell's deposition testimony as substantive evidence without being exposed to the witness's evasiveness and other self-serving devices. The rule is clear: "The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent [of a corporation that is a party] ... may be used by an adverse party for any purpose." Fla.R.Civ.P. 1.330(a)(2); Vecsey v. Vecsey, 115 So.2d 719 (Fla. 3d DCA 1959). See also Hill v. Sadler, 186 So.2d 52 (Fla. 2d DCA) (error to require defendant to place plaintiff on stand as adverse witness in lieu of reading his deposition), cert. denied, 192 So.2d 487 (Fla. 1966). Such a deposition may be used notwithstanding that the deponent is available to testify at the trial. Haines v. Leonard L. Farber Co., 199 So.2d 311 (Fla. 2d DCA 1967), cert. dismissed, 210 So.2d 218 (Fla. 1968); Cooper v. Atlantic Coast Line Railroad Co., 187 So.2d 673 (Fla. 1st DCA), cert. denied, 194 So.2d 617 (Fla. 1966); Monsalvatge & Co. of Miami v. Ryder Leasing, Inc., 151 So.2d 453 (Fla. 3d DCA 1963).
Accordingly, the cause is reversed and remanded for a new trial.
NOTES
[1] We find no error in the trial court's refusal to admit evidence of an unrelated incident involving a discarded diaper which the LaTorres proffered to show a general lack of supervision by the defendant's employees.
[2] The outdoor play area shall be clean, free of litter, nails, glass, and other obvious hazards. All stationary equipment shall be firmly anchored. All equipment and fences shall be free of sharp and jagged edges."
HRS Child Care Standard 10C-10.22(3)(c)(2).
[3] There shall be a minimum of forty-five (45) square feet of usable, safe, and sanitary outdoor play area per child. Play area shall be calculated at the rate of forty-five (45) square feet per child in any group using the play area at one time. A minimum play area shall be provided for one-half (1/2) of the licensed capacity."
HRS Child Care Standard 10C-10.22(3)(c)(1).
[4] "Sanitary" encompasses cleanliness, but it is more specific than "clean" in its reference to the preservation of health and freedom not only from soil but also from any infective and deleterious influence. See Black's Law Dictionary 1204 (5th ed. 1979); The American Heritage Dictionary of the English Language 1150 (New College ed. 1979).
[5] We consider frivolous the defendant's argument that the plaintiffs were not entitled to an instruction that the play area be usable, safe, and sanitary because they had failed to prove that the defendants had violated the entirely separable provision of the regulation, see supra note 3, requiring a minimum of forty-five square feet of play area per child.
[6] If in fact the ants in the play yard bit the child, the jury's finding of no negligence is explicable only as a finding that the hazard was not obvious. If the jury merely believed that the child was not seriously injured and the plaintiffs were making a mountain out of an ant hill, that belief should have been reflected in a low damage award, not a no negligence finding. Of course, if it is undisputed that the ants in the play yard bit the child and caused his injuries, the plaintiffs would be entitled to a directed verdict on liability, since the presence of the injury-causing ants makes the play yard unsafe and unsanitary as a matter of law and constitutes negligence per se.