358 So.2d 1378 (1978)
Elizabeth H. QUINN and Allstate Insurance Company, a Foreign Company Doing Business in Florida, Appellants,
v.
Truman Alan MILLARD, by His Father and Next Friend, Merle A. Millard, et al., Appellees.
Nos. 77-565, 77-281 and 77-179.
District Court of Appeal of Florida, Third District.
May 9, 1978.
Rehearing Denied June 21, 1978.
*1379 Adams, George, Schulte & Ward and Amy Shield Levine, Miami, for appellants.
Knight, Peters, Pickle, Niemoeller & Flynn, Jeanne Heyward, Ezzo & Garel, Miami, for appellees.
Before HAVERFIELD, C.J., and NATHAN and HUBBART, JJ.
NATHAN, Judge.
Appellants herein, defendants below, present multi-faceted consolidated appeals from a final judgment awarding damages to the plaintiffs in a personal injury suit and from the court's denial of their petitions for contribution between joint tortfeasors.
*1380 The event giving rise to the action below was an automobile accident. Two boys, Francis M. Quinn, Jr. (Frank), and Truman Alan Millard (Truman), were driving home from their summer jobs when their automobile collided with a station wagon driven by Wesley McMillan. Frank was driving a small sedan in which Truman was a passenger. McMillan's wife, Annie, was a passenger in his station wagon.
The evidence adduced at trial indicated that Frank was exceeding the speed limit while driving in a southerly direction on a north-south street, and that McMillan failed to yield the right of way after stopping at a stop sign and attempting to turn northward from an easterly direction on an east-west street. A violent collision ensued in which all occupants of both cars were injured, Truman most severely.
Truman and his father, Merle A. Millard, filed suit against Elizabeth H. Quinn (Quinn), Frank's mother, who owned the car in which Frank and Truman were riding; her insurer, Allstate Insurance Company; and Wesley McMillan and Underwriters Adjusting Company, the local representative of Fidelity and Casualty Company of New York (F&C), McMillan's insurer.[1] Truman sought damages for bodily injury, mental suffering and loss of earning capacity; his father sought damages for medical obligations and loss of his son's services.
In their answer to the complaint, defendants Quinn and Allstate included a motion for an order confining Allstate's liability to the limits of its policy coverage. The record reveals no order directly responsive to this motion. During the course of discovery, Quinn and Allstate moved to amend their answer to claim a set off of sums they believed were received by Millard from McMillan's insurer. This motion was granted.
Although no formal dismissal of McMillan and his insurer was announced prior to trial, it appeared, when trial began, that the only remaining defendants in the case were Quinn and Allstate. Just after resting their case, plaintiffs announced that they were taking a voluntary dismissal against McMillan and F&C,[2] since these defendants had remitted several checks to Millard in partial payment of an apparent settlement agreement with the Millards. Defendants Quinn and Allstate opposed allowing dismissal of the other defendants unless the jury were made aware of the alleged settlement. Voluntary dismissal was taken. The jury was not informed of any settlement between plaintiffs and former defendants McMillan and F&C. In due course the jury returned verdicts in favor of Truman in the sum of $275,000 and in favor of his father in the sum of $40,000. Final judgment was rendered against Quinn and Allstate in those amounts, plus costs.
Defendants filed numerous post-trial motions, among them a second motion for limitation of judgment against Allstate, motions to complete certain depositions after trial, a motion for remittitur and a motion to set aside the final judgment for plaintiffs. All the foregoing motions were denied except for the motion to limit judgment, upon which no ruling was made. A post-trial motion to set off the sums paid by McMillan's insurer to Millard was granted. Defendants also petitioned the court for contribution between joint tortfeasors, but these motions were twice denied. Additional facts pertinent to defendants' various arguments will be discussed in conjunction with these issues.
Defendants present eight points on appeal. They first assert that the trial court erred in failing to confine the liability of Allstate to its policy limits of $100,000, and contend that, by entering judgment *1381 against Allstate in the total sum of $315,000, the trial court was, in effect, rewriting the contract of insurance between Quinn and Allstate.
Although this contention is incorrect inasmuch as the trial court did not enter judgment solely against Allstate,[3] defendants are correct in asserting that there was error in the court's failure to resolve the issue of the extent of Allstate's liability by ruling on the motion for limitation of liability. Instead, judgment was entered against both defendants with no specification of the sums recoverable from each. Cf. Soler v. Kukula, 297 So.2d 600 (Fla. 3d DCA 1974) (order of trial court specified limitations of insurer's liability).
The trial court's denial of defendants' motion to set aside final judgment for plaintiffs did not treat the question of the limitation of Allstate's liability under the terms of the policy it had issued to Quinn. Therefore this issue was left unresolved, a situation which is unfair to all parties.
It affirmatively appears from the record that the limit of Allstate's coverage under the policy is $100,000, and no disagreement appears among any of the parties to this cause on this point. However, the record before us does not contain a copy of the policy itself. Therefore we direct that, on remand, the trial court shall verify the policy limits and incorporate its finding on this point to govern a modification of the judgment against Allstate and Quinn. See Stella v. Craine, 281 So.2d 584 (Fla. 4th DCA 1973). And cf. Williams v. Banning, 259 So.2d 725 (Fla. 2d DCA 1972) (where an insured contests his policy limits and no proof of those limits is in evidence, the filing of a cross claim is the proper procedure). The court shall then confine Allstate's liability to the limits of its policy coverage.
Defendants' next assertion of error deals with the testimony of two policemen who were permitted to testify as expert witnesses on the subject of accident reconstruction. One of these officers, Robert Needleman, was not present in the courtroom. His deposition was read in lieu of his actual appearance, since he had informed counsel at the time his deposition was taken that he would be out of town during the trial. The other officer, Robert Dixon, testified in the courtroom. Both officers had arrived at the scene after the collision occurred, and gave opinion testimony as to the speed at which the Quinn vehicle was traveling at the time of impact and as to the precise location of the two cars on the roadway at the time of impact.
Specifically, defendants contend that the court committed prejudicial error in allowing both officers to testify as experts for three reasons, all of which were asserted upon repeated objections raised at trial: (1) Plaintiffs did not make a sufficient showing that the witnesses met the necessary criteria of expertise in the area of accident reconstruction; (2) The officers' opinions were based on data which was insufficient to substantiate their conclusions; and (3) No proper predicate in the form of hypothetical questions was laid for the officers' opinion testimony.
Since essentially similar facts apply to the testimony of both witnesses, the rationale of our decision regarding Officer Dixon's testimony would apply equally to Officer Needleman, but for the applicability of Florida Rule of Civil Procedure 1.330(d)(3)(A) and (B) to the latter's testimony. The rule states:
(3) As to taking of deposition.

(A) Objections to the competency of a witness or to the competency, relevancy or materiality of testimony are not waived by failure to make them before or during the taking of the deposition unless the ground of the objection is one that *1382 might have been obviated or removed if presented at that time.

(B) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form or the questions or answers, ... and errors of any kind that might be obviated, removed or cured if promptly presented are waived unless timely objection to them is made at the taking of the deposition. (Emphasis supplied)
If defendants had raised objections at the time of deposition on the grounds stated in their in-court objections and in this appeal, plaintiffs might have been able to obviate or cure any alleged deficiencies by offering greater proof of the officer's competency as an expert, by probing for additional data to support his conclusions, or by framing appropriate hypotheticals, if indeed such hypotheticals were necessary. The purpose of the rule is to give a party just such opportunities and to avoid undue dissension at trial. Since the required objections were not timely raised, defendants will not be allowed to profit by their own omissions, and we find no prejudicial error in the admission of this witness' deposition. Florida Rule of Civil Procedure 1.330(d)(3)(A) and (B); Evans v. Perry, 161 So.2d 27 (Fla. 2d DCA 1964).
We next consider the applicability of defendants' objections to Officer Dixon's testimony. As to the assertion that he was not qualified to testify as an expert, the record reveals that plaintiffs' counsel did question him on his credentials and the court specifically determined that he was qualified. While our decision as to whether or not he was shown to have possessed the requisite expertise in accident reconstruction might have differed from that of the trial judge, it is a well established principle that such determination lies within the discretion of the trial court and its decision will not be disturbed on appellate review unless both clearly erroneous and prejudicial to the opposing party. Myers v. Korbly, 103 So.2d 215 (Fla. 2d DCA 1958); Upchurch v. Barnes, 197 So.2d 26 (Fla. 4th DCA 1967) and cases cited therein; Warning Safety Lights, Inc. v. Gallor, 346 So.2d 92 (Fla. 3d DCA 1977) and cases cited therein. Since no such strong infirmities appear, this court will not disturb the trial court's ruling that Officer Dixon qualified as an expert witness.
It does not necessarily follow that his opinions were properly admitted, for it must also appear that they were not based on data which was patently insufficient and that they were presented properly. Defendants argue that, since plaintiffs' counsel asked no hypothetical questions of the witness, the form of the questions was improper. This argument fails because, although the witness did not see the accident happen, he testified on the basis of his own physical findings at the scene shortly after the accident. Therefore, no hypothetical questions were necessary.
The issue of whether the witness' conclusions were based on a predicate consisting of sufficient data is less easily resolved, for certain relevant data, e.g. the weight of the cars and their passengers, was omitted from consideration and no evidence was provided as to how the data offered (skid marks, gouge marks, drag factor) was utilized in drawing the conclusions reached. While an expert's opinion cannot be utilized to supply substantial facts necessary to support that opinion, the sufficiency of the facts required to form an opinion must normally be decided by the expert himself because neither trial judges nor appellate judges are usually in a position to determine precisely which facts are dispensable and which are essential to the validity of the opinion reached. Therefore, it is usually up to the opposing side to refute these conclusions, and, unless the omissions are glaring, such deficiencies relate to the weight rather than the admissibility of the expert's testimony. See generally, Nat Harrison Associates, Inc. v. Byrd, 256 So.2d 50 (Fla. 4th DCA 1971). Defendants did not refute the adequacy of the data underlying the witness' opinions at trial by presenting any experts of their own, and we cannot say with certainty that any omitted data was necessary to the formation of *1383 sound opinions on either the speed of the vehicles or the point of impact. But cf. Delta Rent-A-Car, Inc. v. Rihl, 218 So.2d 469 (Fla. 4th DCA 1969) (omission of obviously necessary fact will sustain objection on ground of inadequate predicate).
More persuasive to our conclusion that no prejudicial error resulted from the admission of either officer's expert testimony is that three neutral eyewitnesses who had previously testified at trial gave their opinions on the speed of the vehicles and the point of impact. Their testimony coincided with the opinions of the officers. We are not unmindful of the weight the testimony of police officers, qualified as experts by the court, is likely to have on a jury, see generally Mills v. Redwing Carriers Inc., 127 So.2d 453 (Fla. 2d DCA 1961), but the opinions stated by plaintiffs' expert witnesses nevertheless constituted only cumulative evidence such that, even if error had existed in their admission, such error would have been harmless. Delta Rent-A-Car Inc. v. Rihl, supra; Myers v. Korbly, supra; Atlantic Coast Line Railroad Company v. Hilborn, 195 So.2d 596 (Fla. 3d DCA 1967).
By their third argument, defendants contend the trial court erred in refusing to allow them to re-open their case after both sides had rested and plaintiff had completed his closing argument, asserting that they had received information indicating that Officer Needleman was not outside the court's jurisdiction after all, and that it was crucial that his in-court testimony be obtained. The trial court found there was insufficient basis upon which to grant defendants' request. Since such a decision lies within the discretion of the trial judge and we find nothing in the record which indicates abuse of that discretion, the point requires no further discussion and is deemed without merit.
Defendants' fourth argument challenges the correctness of the trial court's ruling which allowed a psychiatrist to testify as to Truman's mental condition. The assertion that defendants were not timely notified of plaintiffs' intention to call the doctor as a witness is refuted by the record. The contention that the doctor's testimony was inadmissible because he was an examining physician and not a treating physician is governed by this court's decision in Steiger v. Massachusetts Casualty Insurance Company, 253 So.2d 882 (Fla. 3d DCA 1971), which held that the testimony of a psychiatrist is admissible when based on his own examination of the patient and his expertise in psychiatry. Therefore this argument, too, is without merit.
Fifth, defendants contend the trial court erred in failing to admit evidence of a settlement agreement reached between McMillan's insurer and the Millards. The basis of defendants' argument is that the agreement was a "Mary Carter" arrangement and perforce inadmissible. Ward v. Ochoa, 284 So.2d 385 (Fla. 1973); Maule Industries, Inc. v. Roundtree, 284 So.2d 389 (Fla. 1973).
A "Mary Carter" agreement is essentially a pact between a plaintiff and one or more of multiple defendants which is kept secret from the jury and thus operates unfairly to the advantage of the assentors over the non-participating defendants. The plaintiff is commonly guaranteed a stipulated minimum recovery against the participating co-defendant(s) regardless of the outcome of the litigation, and also that the participating co-defendant(s) will proceed to trial in the guise of true adversaries. The consenting co-defendant(s) have the advantage of a pre-determined limit to their liability regardless of the verdict. The excluded defendant(s) would have to bear the prejudicial impact of this secret arrangement if the settlement were hidden from the jury, the prejudice arising from the weight the triers of fact would be likely to give to the testimony of an apparent co-defendant. See Ward v. Ochoa, supra.
Thus at least two fundaments underlie the rationale for admitting "Mary Carter" agreements into evidence: the secrecy of the agreement between a plaintiff and an active co-defendant; and the injustice which is likely to arise from the jury's ignorance *1384 of the settlement. In the case at bar, the bases for asserting the admissibility of the settlement agreement are infirm. McMillan was not an apparent defendant so that the court's refusal to admit the settlement agreement resulted in no significant misapprehensions on the part of the jury.
Claim was originally filed against both McMillan and Quinn (and their respective insurers), so that McMillan was still technically a co-defendant until plaintiffs took a voluntary dismissal against him after presentation of their case in chief. However, it is clear from the record that both sides developed their cases in awareness that Quinn and Allstate were the real defendants in the action.[4] Even the trial judge was surprised by the dismissal since he had assumed that McMillan was no longer a party to the suit. No indication was given the jury from the initiation of the trial to its conclusion that McMillan had ever been a co-defendant, this despite the fact that Quinn and Allstate had ample opportunity prior to the voluntary dismissal (which occurred outside the presence of the jury) to inform the jury of this fact. Accordingly, defendants' contention that the jury would have evaluated McMillan's testimony differently if they had known that he had settled with plaintiffs is without merit, and absent prejudicial impact resulting from the exclusion of the settlement, there is no basis for finding the existence of a "Mary Carter" situation.
The court granted defendants' motions for a set off of the sums the Millards received from McMillan's insurer. This was the correct procedure to follow. See generally, Atlantic Ambulance and Convalescent Service, Inc. v. Asbury, 330 So.2d 477 (Fla. 4th DCA 1975). But cf. Ward v. Ochoa, supra, and Weinstein v. National Car Rentals, 288 So.2d 509 (Fla. 3d DCA 1973) (where true "Mary Carter" Agreement exists, set off is an insufficient remedy). We find no error in the failure to admit the settlement agreement into evidence.[5]
Defendants' sixth argument, dealing with the trial court's refusal to allow post-trial completion of the deposition of F&C's local representative is deemed without merit.
By their seventh argument, defendants assert that the trial court erred in directing a verdict against them and in favor of plaintiffs on the claimed defenses of comparative and contributory negligence on the part of Truman. Defendants contend that two factors militate against the correctness of the court's direction of a verdict on this issue: (1) Since the adoption of comparative negligence in this state, the defense of contributory negligence is available when a passenger fails to protest the driver's negligent actions and intentionally exposes himself to known risks; and (2) Truman's failure to buckle his seat belt contributed to the severity of his injuries.
We do not rule on the viability or applicability of these principles because it is unnecessary for us to treat abstract concepts. The record in this case simply does not reveal sufficient evidence to support the assertion that Truman intentionally exposed himself to known risks, nor does it provide any evidence indicating that less serious injuries would have resulted had *1385 Truman been wearing his seat belt when the collision occurred. Abstract principles unsupported by the evidence adduced at trial do not provide an adequate basis for appellate review. Having reviewed the record most favorably toward defendants on this question as we are compelled to do, we are unable to conclude that a jury could reasonably have found that Truman was contributorily negligent. Accordingly, we affirm the trial court's direction of a verdict on the defenses of contributory and comparative negligence.
Finally, defendants urge that the trial court erred in granting a motion to quash their first petition for contribution between joint tortfeasors and in denying their second petition for contribution, both against McMillan and F&C. Since McMillan and his insurers were not parties to the suit at the time the first petition was filed, having been dismissed earlier, the court was without jurisdiction to entertain the petition, and the motion to quash was properly granted. Although summons was issued against McMillan and F&C prior to submission of the second petition, the summons was improperly issued for the same reason: McMillan and F&C were not parties to the suit. Therefore the trial court did not err in denying defendants' petitions for contribution. See also Section 768.31(4)(a)(b) and (c), Florida Statutes (1977).
Affirmed in part; reversed in part; and remanded with directions to modify the final judgment in accordance with the instructions contained herein.
NOTES
[1] A third party complaint by the McMillans against Quinn and Allstate and a separate lawsuit by Quinn and Allstate against McMillan and F&C, both of which were severed from the action sub judice, also emanated from the same accident. These suits have only indirect relevance to these appeals. See discussion, infra, pertinent to defendants' fifth argument on appeal.
[2] The record does not reveal the formalities by which F&C was substituted for Underwriters Adjusting Co. as a party defendant.
[3] The final judgment read in pertinent part:

"[I]t is hereby considered, ordered and adjudged that Plaintiff Truman Alan Millard does have and recover from the Defendants Elizabeth H. Quinn and Allstate Insurance Company, the sum of ... $275,000; and it is further considered, ordered and adjudged that Plaintiff Merle A. Millard does have and recover from the Defendants Elizabeth H. Quinn and Allstate Insurance Company the sum of . . $40,000, together with their costs to be determined, for all of which let execution issue."
[4] Prior to empaneling the jury, the court announced that the defendants in the case were the Quinns (mother and son) and Allstate. When defense counsel was asked by the court to introduce the defendants, he responded:

"This is Elizabeth H. Quinn and she is the mother of Francis Michael Quinn, Jr., and they are the defendants in this case."
Additionally, both Mr. McMillan and his wife appeared as plaintiffs' witnesses, and defense counsel was permitted to inform the jury that separate actions were pending between the Quinns and the McMillans. Thus the jury had to have been aware that these individuals did not stand united in opposition to the plaintiffs and that each felt the other bore some responsibility for the collision, a point of considerable importance to Quinn's defense. See note 1, supra.
[5] We note parenthetically that plaintiffs' argument that § 768.041 F.S. (1977) precludes admission of the settlement agreement is refuted by the record which makes it clear that no release or covenant not to sue was executed between Millard and McMillan or F&C. The statute does not bar admission of a settlement agreement when neither document has been executed.