SCHWARTZ, ALAN R., Associate Judge.
This appeal and cross-appeal arise out of a wrongful death action in which George C. Morelia and Helen M. Strub (formerly Helen M. Morelia) sued to recover for the death of their son, Gregory C. Morelia. A jury trial resulted in an award of $75,000 to the father and $25,000 to the mother. He accepted his award but she has perfected this appeal. We reverse for a new trial because of the trial judge’s incorrect refusal to allow a psychiatrist to testify on the mother’s behalf.
Gregory was killed in an accident in 1974; the case was tried in 1980. Approximately thirty days prior to trial, appellant paid two hour-long visits to a psychiatrist. He talked with her, but made no physical examination, reviewed no medical records, prescribed no medicine or other treatment and had no further appointments to see her. The defendants objected to the psychiatrist’s proferred testimony on the ground that, as one who was clearly only an “examining,” as opposed to a “treating,” physi-cían, he could not base an expert opinion, as was required in the circumstances, solely upon the statements and history related by the plaintiff. E.g., Marshall v. Papineau, 132 So.2d 786 (Fla. 1st DCA 1961). We hold that, because the rule of inadmissibility relied upon below does not apply to mental health practitioners, the trial court’s acceptance of this position was erroneous.
A decision of one of our sibling courts directly supports this conclusion. In Quinn v. Millard, 358 So.2d 1378 (Fla. 3d DCA 1978), it was said:
Defendants’ fourth argument challenges the correctness of the trial court’s ruling which allowed a psychiatrist to testify as to Truman’s mental condition. The assertion that defendants were not timely notified of plaintiffs’ intention to call the doctor as a witness is refuted by the record. The contention that the doctor’s testimony was inadmissible because he was an examining physician and not a treating physician is governed by this court’s decision in Steiger v. Massachusetts Casualty Insurance Company, 253 So.2d 882 (Fla. 3d DCA 1971), which held that the testimony of a psychiatrist is admissible when based on his own examination of the patient and his expertise in psychiatry.[1] Therefore this argument, too, is without merit.
358 So.2d at 1383. Thus Quinn is firm authority that the supposed treating-examining dichotomy[2] is inapplicable to the field of mental illness. Even if Quinn did not exist, however, we believe that the same conclusion is required by the logic of the other decided cases in the area. It is well-established in Florida and elsewhere that even a non-treating physician may base his *125 opinions upon a medical “examination” of the patient. E.g., Marine Exploration Co. v. McCoy, 308 So.2d 43 (Fla. 3d DCA 1975); Raydel, Ltd. v. Medcalfe, 162 So.2d 910 (Fla. 3d DCA 1964), quashed on other grounds, 178 So.2d 569 (Fla.1965); North American Accident Ins. Co. v. Burkett, 281 P.2d 434 (Okl.1955). Since mental dysfunctions are neither visible nor palpable, the only way in which a psychiatrist can conduct such an examination is to listen to and, in the light of the doctor’s expertise, critically evaluate what the patient says is disturbing him. To hold that because this process sounds very much like giving an ordinary “history” which, under the law, cannot form the basis of an examiner’s opinion concerning the extent of injury— even though no other process is possible in the context of the psychiatrist’s work — is impermissibly to allow the verbal form of a legal construct to control over the realities of the particular situation. Many decisions, including those in jurisdictions which generally follow the Florida rule, have recognized that this is the case by specifically permitting examining psychiatrists and psychologists to testify on the basis of their patients’ verbalized complaints.[3] E.g., Bevevino v. Saydjari, 574 F.2d 676 (2d Cir.1978); Kaufman v. Kaufman, 82 App.D.C. 397, 164 F.2d 519 (D.C.Cir.1947); United States v. Roberts, 62 F.2d 594 (10th Cir.1932); Simon v. Solomon, 385 Mass. 91, 431 N.E.2d 556 (1982); Shoshone Coca-Cola Bottling Co. v. Dolinski, 82 Nev. 439, 420 P.2d 855 (1966); Tramutola v. Bortone, 63 N.J. 9, 304 A.2d 197 (1973). We now do so as well.[4]
The defendants have cross appealed the trial court’s reinstatement of the case after it had been dismissed for lack of prosecution. Our review of the record convinces us that no reversible error has been demonstrated in this regard.
Accordingly, the judgment appealed from is reversed for a new trial on the issue of the mother’s damages alone.
DOWNEY and DELL, JJ., concur.

. That the Steiger case may have been misinterpreted does not detract from the actual holding of Quinn.

. It is not insignificant to our consideration of this issue that under the Florida Evidence Code, Sec. 90.803(4), Fla.Stat. (1981), this always unsatisfactory distinction no longer exists. See Ehrhardt, 5 West’s Florida Practice, Florida Evidence § 803.04 (1977) (“[T]he drafters of the Code felt that the distinction between treating and examining physicians is no longer tenable and therefore eliminated it.”) While the code became effective subsequent to the trial in this case, we should not ignore the legislative decision it embodies in judicially resolving the identical question. See Dade County Medical Association v. Hlis, 372 So.2d 117, 119 (Fla. 3d DCA 1979), followed in Good Samaritan Hospital Ass’n., Inc. v. Simon, 370 So.2d 1174 (Fla. 4th DCA 1979) and Auld v. Holly, 418 So.2d 1020 (Fla. 4th DCA 1982).

. No court which has been directly faced with the issue seems to have ruled otherwise.

. This ruling makes it unnecessary to consider the appellant’s other points.