936 So.2d 5 (2006)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Gerald A. ST. GODARD and Rachael St. Godard, Appellees.
No. 4D05-366.
District Court of Appeal of Florida, Fourth District.
May 10, 2006.
Rehearing Denied September 8, 2006.
*6 Frances F. Guasch of Luis E. Ordonez & Associates, Miami, for appellant.
Barbara J. Compiani and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., and Christopher M. Larmoyeux of Larmoyeux & Bone, P.L., West Palm Beach, for appellees.
FARMER, J.
This appeal stems from a trial judge's decision not to limit a judgment on an uninsured motorist's (UM) claim to the policy limits. Because there was no basis pleaded or litigated in this case for damages greater than the UM coverage afforded by the insurer, we reverse.
Before suit was filed, the attorney for the insureds wrote their motor vehicle insurance carrier, requesting the information specified in section 627.4137.[1] State Farm responded on a letterhead with the legend "State Farm Insurance Companies,"[2] [e.s.] stating a claim number, identifying the insured as Gerry A. St. Godard, and stating a date of loss. The body of the letter said:
In response to your request, please find insurance information regarding policy number XXXX-XXX-XXF for the above date of loss.
1. The name of the insurer:
State Farm Mutual Automobile Insurance Company
2. The name of each insured: Gerry A. St. Godard
Rachael St. Godard
3. Available coverage is as follows:

*7 * Bodily Injury Liability: 100,000/300,000
* Property Damage Liability: 50,000
* Personal Injury Coverage: P10/No deductible
* Medical Payment Coverage: 5,000
* Comprehensive: $500 Deductible
* Collision: $500 Deductible
* Emergency Road Service
* Rental Coverage: R1 80%/500
* Uninsured MotoristNon Stacking: 100,000/ 300,000
4. Policy or coverage defenses known to the Company at this time: None at this time
5. Umbrella or excess insurance known to the Company at this time: State Farm Fire & Casualty Policy # 79CE1564 Limits: $1,000,000[3]
Relying on paragraph 5, the insureds argue that damages under UM policy number XXXX-XXX-XXF greater than $100,000 were available because of the reference to umbrella or excess policy number 79CE1564 mentioned in the above response. They also argue that they were asserting a bad faith claim against their UM insurer that was not premature. We set out the history of this case to demonstrate the basis for our disagreement with these arguments.
The insureds[4] filed suit against State Farm Mutual Automobile Insurance Company (State Farm) and alleged in paragraph 5 of their Complaint the following:
At all times material hereto, there was in full force and effect a policy of automobile insurance issued by the Defendant, State Farm Mutual Automobile Insurance Company, which extended uninsured motorist coverage to the Plaintiffs. The policy is identified as number XXXX-XXX-XXF. A copy of said policy is attached hereto as Exhibit A.
The Complaint also alleged that an insured suffered an automobile accident caused by an uninsured driver in which he incurred injuries and damages and that he had complied with all conditions precedent to UM coverage. Their pleading closed with a prayer for "judgment for damages" against defendant State Farm Mutual Automobile Insurance Company under the UM coverage afforded by policy number XXXX-XXX-XXF.
Thus the only claim alleged in the Complaint against their UM insurer was the husband's claim for UM benefits arising from the accident in which they alleged that the driver was uninsured or underinsured, together with his wife's derivative claim for loss of consortium. The insureds made no allegation or prayer for relief in which they sought damages greater than the UM coverage provided in the insurance contract on which they based their suit. They included no claim against State Farm sounding in bad faith in their action. They sought damages only within the UM coverage provided in policy number XXXX-XXX-XXF. Their Complaint never mentioned or sought damages under the umbrella or excess policy, number 79CE1564. Similarly, they failed to name and join State Farm Fire and Casualty as a party defendant in this action.
In its Answer to the Complaint, State Farm Mutual Automobile Insurance alleged in paragraph 5 the following:
Defendant admits that at all times material hereto, there was in full force and *8 effect a policy of automobile insurance issued by said Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, which extended uninsured motorist coverage to the Plaintiffs and that said policy of insurance was policy number XXXX-XXX-XXF. Defendants attorney does not have a policy of insurance attached to his copy of the Complaint and does not know if it was attached to the original served upon STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY. Defendant would further state that said policy of insurance speaks for itself, and Plaintiffs' claims, if any, are subject to all the terms, provisions, conditions, definitions, exclusions, and limitations of said insurance policy.
Further, State Farm alleged in paragraph 11 that the UM coverage applied only to any difference "between the sum of such benefits and the damages sustained, up to the maximum amount of such coverage provided under the policy alleged." [e.s.] In paragraph 14, State Farm again alleged that plaintiffs' claims under the UM policy were:
subject to the limits of uninsured and/or underinsured motorist coverage provided in the policy of the Defendant issued to the named insureds/Plaintiffs, and this Defendant's liability, if any, is entirely dependent and contingent upon the provisions and conditions set forth in the aforementioned policy. [e.s.]
In the same pleading, however, State Farm denied that the insured's injury or condition had been actually caused by the accident; denied that even if it were caused by the accident the driver was uninsured or underinsured; and denied the insureds' allegation of compliance with all policy conditions precedent to UM damages from State Farm. The insureds did not file a Reply to the Answer seeking to avoid the UM policy limits.
As a result of these pleadings, coverage under the UM policy up to its stated limits of $100,000 was an admitted fact. From the presuit declaration by State Farm under oath in response to the inquiry of these insureds, the amount of the limits on the UM coverage provided by policy number XXXX-XXX-XXF was known to both parties, and neither one had placed this amount in issue by the pleadings. Instead the disputed facts for trial were whether the insured's injury or condition resulted from the accident, the amount of the damages attributable to the accident, the extent and amount of any covered damages uninsured or underinsured, and whether insureds had complied with the policy's UM conditions. There was no basis for either party to offer evidence at trial as to the limits of UM coverage.
The case was tried to a jury which returned a verdict finding damages resulting from the accident in the combined amount of $269,105 (which included $25,000 on the consortium claim). Seven days after the verdict, State Farm filed a motion for a remittitur to reduce damages to the UM limits in the policynamely $100,000. Among other things, the motion said: "Further the contractual limits for the insurance policy that was in effect, again as evidenced by the Affidavit ..., was one hundred thousand dollars ($100,000)." In apparent anticipation that the insureds might argue that State Farm was guilty of bad faith in its handling of the UM claim in suit and that such bad faith would authorize a judgment in excess of UM policy limits, State Farm's motion asserted that the insureds had failed to give any notice of an intent to claim bad faith damages, as required by statute.[5] State Farm also *9 filed a companion motion for a new trial on various grounds. On the day after these motions were filed, the court entered judgment on the jury verdict without reducing the amount to UM policy limits. Three days later, the court entered an order directing the insureds to file a response to the motion for remittitur within 15 days and, at the same time, a separate order denying State Farm's motion for a new trial.
Within ten days after the entry of judgment, State Farm filed a post-judgment motion to amend the judgment to UM policy limits. This post-judgment motion repeated the arguments made in its earlier post-verdict motion to limit damages to policy limits. In a later response to the motion for remittitur, the insureds argued that damages greater than the UM policy limits of $100,000 were available because of the excess policy mentioned in the presuit letter from State Farm and because of a bad faith claim that was not premature. Two days after the response by the insureds, the court entered an order denying the motion for remittitur but said nothing about State Farm's post-judgment motion to amend the final judgment.
Although State Farm later filed a motion for rehearing of the order on its motion for remittitur and other motions related to a stay pending review and supersedeas, the court took no action on State Farm's post-judgment motion to amend judgment until nearly three months later, when it finally entered an order denying the motion "as moot." State Farm timely filed this appeal within 30 days after this last order. We have jurisdiction and reject the insureds' arguments to the contrary, as well as the companion argument that State Farm has not preserved the issue, without further comment.
The issue is whether there was any basis for a judgment in this case against State Farm Mutual Automobile Insurance in excess of the UM policy limits of $100,000. Two strong principles inform our decision. First, estoppel may not be used affirmatively against an insurer to create or extend coverage otherwise lacking in the policy. Doe v. Allstate Ins. Co., 653 So.2d 371, 374 (Fla.1995); AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998, 1000 (Fla.1989); Crown Life Ins. Co. v. McBride, 517 So.2d 660, 661 (Fla.1987); Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co., 268 So.2d 560, 563 (Fla. 4th DCA 1972), adopted, 276 So.2d 37 (Fla. 1973). Second, as a necessary corollary to the first, in the absence of a judicial finding of bad faith, in an action against an insurer for damages under a policy of insurance, a final judgment against the insurer cannot exceed the stated policy limits. Allstate Ins. Co. v. Sutton, 707 So.2d 760, 761 (Fla. 2d DCA 1998); Gov't Employees Ins. Co. v. Robinson, 581 So.2d 230, 231 (Fla. 3d DCA 1991); Dixie Ins. Co. v. Lewis, 484 So.2d 89, 89 (Fla. 2d DCA 1986); Allstate Ins. Co. v. Shilling, 374 So.2d 611, 614 (Fla. 4th DCA 1979); Quinn v. Millard, 358 So.2d 1378, 1381 (Fla. 3d DCA 1978), abrogated on other grounds by Ridley v. Safety Kleen Corp., 693 So.2d 934 (Fla.1996); Soler v. Kukula, 297 So.2d 600, 601 (Fla. 3d DCA 1974); *10 State Farm Mut. Auto. Ins. Co. v. Horkheimer, 814 So.2d 1069, 1073 (Fla. 4th DCA 2001); Stella v. Craine, 281 So.2d 584, 585 (Fla. 4th DCA 1973).
We reject out of hand the insureds' argument that their attempt to initiate a bad faith claim after the verdict would justify a judgment in this action for UM benefits, greater than the UM policy limits. The pleading on which they founded this action, the Complaint, manifestly contained only a claim for UM benefits under policy number XXXX-XXX-XXF. They did not include a bad faith claim; they did not seek damages greater than the UM policy limits. They tried their claim solely as a claim for UM benefits. There is simply no theory under which the UM judgment they sought in this action could be read to justify a judgment for bad faith damages as well.
The insureds base their argument on the contention that they did not know what the limits of their UM policy were, and that they thought that their umbrella/excess policy increased the UM limits beyond $100,000. They contend that the wording of State Farm's presuit response to their inquiry for UM policy information could reasonably be understood to incorporate the excess coverage in the State Farm Fire and Casualty policy number 79CE1564 into the UM coverage provided by State Farm Mutual Automobile Insurance policy number XXXX-XXX-XXF. We reject these arguments.
As with almost all writings, context is critical. Here the insureds' lawyer requested the information under section 627.4137 to facilitate the filing of a lawsuit against State Farm for UM damages. State Farm's response follows the format in the statute. The response identifies a policy by name and number, policy number XXXX-XXX-XXF; states the amounts of all coverages under policy XXXX-XXX-XXF, specifically naming UM coverage, among others; identifies the named insureds; and disclaims knowing of any coverage defense. It then states that State Farm Fire & Casualty has provided a policy of umbrella or excess insurance to the insureds, giving policy number 79CE1564. It adds that the excess or umbrella policy has limits of "$1,000,000" but plainly omits any indication that the excess or umbrella policy includes additional UM coverage. The response says nothing more than that. From this context, there is no more reason to read the umbrella/excess coverage limits into the UM coverage in this response than there would be to read it into the bodily injury liability, the property damage liability, the medical payment coverage, the comprehensive coverage, or the rental coverageeach of which was also identified in the response.
As to their contention that they did not know the limits of the UM policy, these insureds were parties to the UM policy issued by State Farm Mutual, as well as the excess or umbrella policy issued by State Farm Fire and Casualty. As parties to these contracts of insurance, themselves, they are charged with knowledge of the contents and are bound by the terms. See Allied Van Lines, Inc. v. Bratton, 351 So.2d 344, 347-48 (Fla.1977) ("It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding. No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it." [c.o.]). If the insureds wanted to confirm what coverage was actually afforded by the umbrella/excess policy, they could have made a request to State Farm *11 Fire and Casualty under section 627.4137 for such information and a copy of the policy. In any case, it is impossible under the two principles discussed above to read the response to suggest that the excess/umbrella coverage afforded by a separate affiliate in a separate policy has been incorporated into the UM policy sued upon.
Similarly there is no basis for their contention that State Farm's attempts to adduce evidence by affidavit after the verdict as to the amount of the UM policy is somehow improper or insufficient. As we have just seen, as parties to the contract, they could not be heard to claim a lack of knowledge as to the limits of their own UM coverage. And anyway, they actually had knowledge of such limits from State Farm's presuit response to the letter on their behalf under section 627.4137. Having brought suit for damages under the contract of UM insurance, they were in no position to base any issue in their lawsuit on a contention that the limits of UM coverage were unknown to them and in dispute.
And even assuming it were somehow necessary for State Farm to offer evidence as to the amount of the UM policy limits, there is nothing improper or insufficient about its post verdict affidavit. See Stella v. Craine, 281 So.2d 584, 585-86 (Fla. 4th DCA 1973) (holding that where insured did not disagree as to policy limits, and certified copy of liability policy was produced for examination by court and counsel before trial court entered amended final judgment reducing insurer's liability to amount of policy limits, trial court did not err in amending the final judgment without following cross claim procedure which is required when there is a controversy as to the policy limits); Dixie Ins. Co. v. Lewis, 484 So.2d 89 (Fla. 2d DCA 1986) (holding that final judgment in favor of insured and against insurer was required to be modified so as to limit insurer's liability to amount of policy limits, which had been revealed to insured in pretrial discovery, no disagreement existed as to policy limits, and insurer filed proper motion for modification of judgment accompanied by supporting affidavit); Allstate Ins. Co. v. Shilling, 374 So.2d 611, 614 (Fla. 4th DCA 1979) (holding that when no dispute exists as to policy limits or available coverage and such limits are made known to all parties during pre-trial discovery, trial court should upon proper verification grant insurer's motion to limit judgment); see also State Farm Mut. Auto. Ins. Co. v. Horkheimer, 814 So.2d 1069, 1071 (Fla. 4th DCA 2001) (saying that rule precluding judgment against insurer greater than policy limits has been applied in cases where policy limits were revealed and agreed to in the record in some form, usually during discovery).
On remand, the judgment shall be reduced to UM policy limits of $100,000.
Reversed.
GUNTHER, J., and DONNER, AMY STEELE, Associate Judge, concur.
NOTES
[1] See § 627.4137, Fla. Stat. (2005) (providing that upon written request liability insurer shall furnish to any claimant a statement under oath for each policy of insurance including: (a) name of insurer; (b) name of each insured; (c) limits of liability coverage; (d) whether the insurer believes that any coverage defense is available; (e) copy of policy; and any known excess or umbrella insurance). In this case, the named insureds were themselves making their own claim under their UM coverage.
[2] Plaintiffs' counsel argues an inference that the letter indicates a response from a State Farm affiliate (State Farm Fire & Casualty) different from the one that actually issued the uninsured motorist coverage in question. As the emphasized word Companies demonstrates, however, the letterhead is obviously intended to be used by or on behalf of any State Farm affiliate.
[3] The letter was sworn to and subscribed before a notary public.
[4] Gerard St. Godard claimed damages arising directly from a covered accident, and Rachael St. Godard claimed damages from loss of consortium.
[5] See § 624.155(3), Fla. Stat. (2005) (condition precedent to bringing statutory action for bad faith is 60-day written notice of violation). But see Vest v. Travelers Ins. Co., 753 So.2d 1270, 1275 (Fla.2000) (insured claiming an insurer's bad faith failure to settle UM claim may send statutory notice of alleged violation before a determination of liability or damages); Rubio v. State Farm Fire & Cas. Co., 662 So.2d 956, 957 (Fla. 3d DCA 1995) (before enactment of section 624.155, no common law cause of action for first party bad faith, but insured could allege independent tort such as fraud or intentional infliction of emotional distress).