WELLS, Judge.
Kathleen Swan, as personal representative of the Estate and Survivors of Alan Swan, Sr., deceased, and Mary Joe Swan, appeal a final summary judgment entered in favor of State Farm Mutual Automobile Insurance Company on their claim for stacked uninsured motorist (“UM”) benefits under an automobile insurance policy. Because the insureds expressly rejected UM coverage on the subject policy and paid no premium for such coverage, we affirm. See Coleman v. Fla. Ins. Guar. Ass’n, 517 So.2d 686, 689-91 (Fla.1988) (holding that while “[t]he owner of several vehicles, by paying a single premium for [UM] coverage applicable to only one of them, secures [UM] coverage for himself and his family while occupying the uninsured vehicles as well as the insured vehicle,” the “number of uninsured motorist coverages available to be stacked should be based upon the number of coverages for which uninsured motorist premiums were paid”); Collins v. Gov’t Employees Ins. Co., 922 So.2d 358, 354 (Fla. 3d DCA 2006) (“Uninsured motorist coverage may be stacked based on the number of uninsured motorist coverages for which the insured has paid a premium rather than just the number of automobiles owned by the insured.”).
This is an insurance dispute arising out of an automobile accident that occurred on June 8, 2008, when a Honda vehicle owned and occupied by Alan Swan, Sr. and Mary Joe Swan (“the Swans”) was struck by a vehicle driven by an uninsured motorist, Juan Carlos Delgado. Mary Joe Swan was seriously injured in the accident and Alan Swan, Sr. died as a result of his injuries. Thereafter, Kathleen Swan, as personal representative for Alan Swan, Sr.’s estate, and Mary Joe Swan applied to State Farm for UM benefits under two separate automobile insurance policies: the first policy being the policy insuring the Swan’s Honda that was involved in the accident; the second policy being the policy insuring the Swan’s separately insured Acura. Specifically, the appellants sought to obtain $200,000 ($100,000 per person) in stacked UM benefits from State Farm from the policy insuring the Honda vehicle and another $200,000 ($100,000 per person) in stacked UM benefits from the policy insuring the Acura vehicle.
State Farm agreed to tender $200,000 for UM coverage under the Honda policy, but refused to tender an additional $200,000 under the Acura policy. The appellants thereafter filed this action in the lower court against the uninsured motor *516 ist, Mr. Delgado, and State Farm.[1] The trial court entered summary final judgment in favor of State Farm, finding that the appellants were not entitled to an additional. $200,000 in UM benefits under the Acura policy because the Swans had expressly rejected UM coverage on that policy and had not paid any premiums for UM benefits thereunder. This appeal ensued.
With respect to the Swans, State Farm has always issued a separate policy for each of their vehicles. The so-called “Acura policy” at issue here was purchased in 1990 and, while the vehicle covered under that policy has changed over time (most recently to the Acura insured therein), the coverage afforded by the policy has remained the same. It is undisputed that when the Swans purchased this Acura policy in 1990, they expressly rejected UM coverage via a signed rejection form and have never paid a premium for UM coverage on that policy. The Swans purchased the so-called “Honda policy” in 2001. Unlike the Acura policy, the Swans did not reject UM coverage on the Honda vehicle in writing. The Swans therefore received stacked UM coverage in the Honda policy as required by section 627.727 of the Florida Statutes; as required they paid an additional premium for this coverage.
The appellants first argument is that that they are entitled to recover an additional $200,000 in UM benefits from the Acura policy — even though UM coverage on that policy was rejected — because the Swans purchased stacked UM coverage on the Honda policy. This, according to appellants, is because the commonly understood meaning of the word “stacked” presupposes that there are at least two UM policy limits that will be added together to give greater coverage than a single policy limit alone. We disagree as this argument conflates UM coverage, which ensures that the insurer will pay damages for bodily injuries sustained in an accident with an uninsured motor vehicle, with aggregating UM policy limits.
In Coleman, the Florida Supreme Court dispelled this argument, definitively explaining that the payment of a single premium for UM coverage on one vehicle secures liability insurance for the insured regardless of what vehicle the insured is driving at the time of an accident with an uninsured motorist; and, that the payment of an additional premium for UM coverage on a second vehicle provides additional UM coverage that supplements the insurance already available under a single coverage, which can be added together with the single coverage to provide a higher payout to the injured insured:
“[T]he case law supports tying the number of UM coverages available to the number of premiums for which UM coverage was paid.” 501 So.2d at 34. Uninsured motorist protection does not inure to a particular motor vehicle, but instead protects the named insured or insured members of his family against bodily injury inflicted by the negligence of any uninsured motorist under whatever conditions, locations, or circumstances any of such insureds happen to be in at the time. See Mullis v. State Farm Mutual Auto. Insurance Co., 252 So.2d 229 (Fla.1971); Tucker v. Government Employees Insurance Co., 288 So.2d 238, 242 (Fla.1973). Thus, the insured may be a pedestrian at the time of such injury, riding in motor vehicles of others or in public conveyances or occupying motor vehicles owned by but which are not “insured automobiles” of the named insured. Mullis, 252 So.2d at 233. It is *517 this aspect of uninsured motorist coverage which gives rise to aggregation or “stacking” of uninsured motorist coverages. The owner of several vehicles, by paying a single premium for coverage applicable to only one of them, secures coverage for himself and his family while occupying the uninsured vehicles as well as the insured vehicle. Thus, when an insured pays additional uninsured motorist coverage premiums, he has purchased additional coverage “coextensive with and supplementing the insurance already available under a single coverage.” Schermer, Automobile Liability Insurance, § 31.02[8] (1987). Otherwise, nothing would have been gained by payment of an additional premium because the insured’s purchase of a single uninsured motorist coverage protects him “whenever or wherever bodily injury is inflicted upon him by the negligence of an uninsured motorist.” Mullis, 252 So.2d at 238.
Thus, in Sellers v. United States Fidelity & Guaranty Co., 185 So.2d 689 (Fla.1966), it was held that an insured protected by more than one policy of uninsured motorist insurance was entitled to recover under all such policies to the extent of his bodily injury. Later, in Tucker, this Court stated that the same rule applied when multiple coverage was afforded in a single policy rather than multiple policies. As we stated in Tucker, “[a]n insured under uninsured motorist coverage is entitled by the statute to the full bodily injury protection that he purchases and for which he pays premi-urns,” regardless of the number of vehicles covered by his auto liability policy. 288 So.2d 238, 242 (Fla.1973). Accordingly, consistent with this Court’s decision in Tucker, we hold that an insured may stack a number of uninsured motorist coverages equal to the number of coverages for which he paid a premium.
[[Image here]]
In summary, we hold that the number of uninsured motorist coverages available to be stacked should be based upon the number of coverages for which uninsured motorist premiums were paid.
Coleman, 517 So.2d at 689-91. Based on Coleman, we must find that the appellants are not entitled to any additional UM benefits from the Acura policy because the Swans paid no UM premium on that policy and, in fact, expressly rejected such coverage.
The appellant’s next argument is that by not permitting the Swans to aggregate UM benefits in this case, the Swans received no benefit at all for paying an additional premium for stacked UM coverage over the less expensive non-stacked UM coverage. We again disagree. Not only does this argument reflect a fundamental misunderstanding of the differences between “stacked” and “non-stacked” UM coverage as set forth in section 627.727, but it also ignores the fact that this Court rejected this same argument in Collins, 922 So.2d at 353.
Section 627.727(1) mandates that insurers offer UM coverage in all automobile insurance policies.[2] By operation of this *518 statute, the insured receives stacked UM coverage unless the insured either makes a written rejection of the coverage on behalf of all insureds under the policy, or the insured elects to accept non-stacked UM coverage from the insurer. § 627.727(1), (9) Fla. Stat. (2010). While the policy premium for non-stacked coverage is at least twenty percent less than the premium for stacked coverage, non-stacked coverage is subject to numerous coverage limitations that are not applicable to stacked coverage. See § 627.727(9)(a)-(e), Fla. Stat. (2010). These limitations include not just the inability to add together (or “stack”) the UM liability limits of two or more motor vehicle policies — which is the primary focus of the appellants — see § 627.727(9)(a), Fla. Stat. (2010), but also the restriction that non-stacked coverage does not apply to an insured who is injured “while occupying any vehicle owned by such insured[ ] for which uninsured motorist coverage was not purchased.” § 627.727(9)(d), Fla. Stat. (2010). Therefore, a crucial distinction between stacked and non-stacked coverage that is overlooked by the appellants is that, unlike stacked coverage, non-stacked UM coverage does not provide coverage for every vehicle that the insured owns — it only provides coverage for the vehicle on which the UM premium was paid.
By way of example, consider three possible scenarios involving an accident between a vehicle owned and occupied by the Swans with a vehicle driven by an uninsured motorist, the last of which occurred in this case:
• If Mr. Swan had paid a premium for stacked UM coverage on both of the policies insuring the Honda and the Acura, then it would not matter which vehicle he and his wife were occupying at the time of the accident. They would be entitled to recover UM benefits from both policies under the Florida Supreme Court’s Coleman opinion. That is, they would be able to claim $100,000 per person under the UM coverage purchased and paid for on the Honda and $100,000 per person under the UM coverage purchased and paid for on the Acura, for a total of $400,000.
• If Mr. Swan had accepted and paid a reduced premium for non-stacked UM coverage on the Honda, but rejected UM coverage on the Acura, then he and his wife would only be able to recover $100,000 per person from the Honda policy if they were occupying the Honda. There would be no UM coverage whatsoever if they were occupying the Acura pursuant to the limitation set forth in section 627.727(9)(d).
• If, as in this case, Mr. Swan paid a premium for stacked coverage on the Honda, but rejected UM coverage on the Acura then it does not matter which vehicle he and his wife were occupying at the time of the accident. He and his wife would be entitled to UM benefits under the Honda policy, even if they were occupying the Acura. However, under Coleman they would be entitled to receive only $100,000 per person, for a total of $200,000, under the Honda policy because they only paid a premium for stacked coverage on that vehicle. The Swans could, not also recover UM benefits under the Acura policy because they rejected UM coverage and paid no additional premium for it.
In claiming that the Swans received no benefit in purchasing stacked UM coverage in this case because they were precluded from recovering an additional $200,000 in UM benefits from the Acura policy, the appellants ignore the second *519 example above, which demonstrates a very valuable benefit that stacked coverage provides over non-stacked coverage beyond just the ability to aggregate UM benefits. Indeed, this Court reached this very conclusion in Collins, where we explained that even an insured who owns only one automobile receives additional benefits by paying for stacked coverage:
Collins contended at oral argument that she is entitled to a return of her stacked uninsured motorist premium for the years she owned only one automobile. She argues that an insured benefits from stacking only when the insured can aggregate or stack the coverage from one vehicle upon another. Therefore, she received no benefit for the additional premiums she paid. We disagree. It is true that stacked uninsured coverage enables the insured to stack the coverage for one owned automobile onto the coverage of another owned automobile. That is not the only benefit of stacked coverage. Even with one automobile, should the insured have an uninsured motorist claim, stacked coverage provides certain benefits above those received with non-stacked. Section 627.727(9)(a)-(e) delineates the limitations in uninsured motorist coverage, in addition to the limitation of not being able to stack the coverage from one vehicle onto another, when non-stacked insurance is obtained for a twenty percent decrease in premium. When the insured purchases stacked coverage, the limitations of section 627.727(9)(a)-(e) do not apply thereby giving the insured certain benefits for the twenty percent additional premium even when only one vehicle is owned. Therefore, a benefit was received by Collins for the premiums she paid for stacked coverage.
Collins, 922 So.2d at 353.[3]
For these reasons, we find that the appellants are not entitled to receive addi *520 tional UM benefits on the Acura policy and affirm summary final judgment in favor of State Farm.

. For purposes of this appeal, the only relevant claims are those against State Farm seeking an additional $200,000 in stacked UM benefits on the Acura policy.

. Section 627.727(1) provides, in relevant part:
No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

. The limitations non-stacked coverage set forth in section 627.727(9)(a)-(e) are as follows:
(9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer:
(a) The coverage provided as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an injured person for any one accident, except as provided in paragraph (c).
(b) If at the time of the accident the injured person is occupying a motor vehicle, the uninsured motorist coverage available to her or him is the coverage available as to that motor vehicle.
(c) If the injured person is occupying a motor vehicle which is not owned by her or him or by a family member residing with her or him, the injured person is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which she or he is a named insured or insured family member. Such coverage shall be excess over the coverage on the vehicle the injured person is occupying.
(d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.
(e) If, at the time of the accident the injured person is not occupying a motor vehicle, she or he is entitled to select any one limit of uninsured motorist coverage for any one vehicle afforded by a policy under which she or he is insured as a named insured or as an insured resident of the named insured's household.
In connection with the offer authorized by this subsection, insurers shall inform the named insured, applicant, or lessee, on a form approved by the office, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations. If this form is signed by a named insured, applicant, or lessee, it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations. When the named *520 insured, applicant, or lessee has initially accepted such limitations, such acceptance shall apply to any policy which renews, extends, changes, supersedes, or replaces an existing policy unless the named insured requests deletion of such limitations and pays the appropriate premium for such coverage. Any insurer who provides coverage which includes the limitations provided in this subsection shall file revised premium rates with the office for such uninsured motorist coverage to take effect prior to initially providing such coverage. The revised rates shall reflect the anticipated reduction in loss costs attributable to such limitations but shall in any event reflect a reduction in the uninsured motorist coverage premium of at least 20 percent for policies with such limitations. Such filing shall not increase the rates for coverage which does not contain the limitations authorized by this subsection, and such rates shall remain in effect until the insurer demonstrates the need for a change in uninsured motorist rates pursuant to s. 627.0651.