[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15213
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-00238-GRJ

JAMES BRANNAN,

Plaintiff-
Counter Defendant-
Appellant,

versus

GEICO INDEMNITY COMPANY,

Defendant-Appellee,

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Defendant-
Counter Claimant-
Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 17, 2014)

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

James Brannan appeals the magistrate judge's[1] grant of summary judgment in favor of Geico Indemnity Company (Indemnity) and Government Employees Insurance Company (GEICO) (collectively "the defendants"). After Brannan was injured in a motorcycle accident, Indemnity paid him $10,000 in uninsured motorist (UM) benefits under the terms of a motorcycle insurance policy (Motorcycle Policy). But Brannan argues that GEICO owes him an additional $300,000 in UM benefits under the terms of a separate automobile insurance policy (Auto Policy). Because we agree that the defendants fulfilled all of their obligations to Brannan, we affirm.

I.

On October 13, 2010, Brannan was riding his motorcycle on Highway 27 in Bronson, Florida, when he was struck by an automobile and severely injured. The at-fault driver of the automobile was uninsured. As a result, Brannan sought

_____

[1] Under 28 U.S.C. § 636(c)(3), we have jurisdiction over this appeal because the parties consented to have a magistrate judge conduct the proceedings in this case, including ordering the entry of judgment. *See* 28 U.S.C. § 636(c).

2

compensation from Indemnity. Because the motorcycle was covered by an insurance policy that provided $10,000 in "stacked" UM coverage, Indemnity paid Brannan the full value of this benefit.

Brannan also owned three automobiles that were insured by GEICO under a separate insurance policy. Although none of his three automobiles had been involved in the accident, Brannan claimed that he was entitled to an additional $300,000 in UM coverage under the Auto Policy. GEICO rejected this claim because Brannan was not injured while driving any of his automobiles, and Brannan had expressly rejected stacked coverage when he signed the UM selection form on his Auto Policy.

Brannan filed suit, alleging breach of contract, negligence, and a failure to provide him with necessary policy information as required under Fla. Stat. § 627.4137. He also sought declaratory relief as to his entitlement to stacked UM coverage under both policies. GEICO filed a counterclaim seeking a declaratory judgment that Brannan was not entitled to any additional UM benefits for the accident because the motorcycle was not insured under the Auto Policy. After the parties filed cross motions for summary judgment, a magistrate judge granted summary judgment in favor of the defendants. This is Brannan's appeal.

## II.

3

We review *de novo* the district court's grant of summary judgment, applying the same legal standards as the district court. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1242-43 (11th Cir. 2003). Summary judgment is appropriate if the evidence establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The evidence, and all reasonable inferences, must be viewed in the light most favorable to the non-moving party. *McCormick*, 333 F.3d at 1243.

Florida law currently allows automobile insurance companies to offer two types of UM coverage: "stacked" and "non-stacked." *See generally* Fla. Stat. § 627.727(9); *Swan v. State Farm Mut. Auto. Ins. Co.*, 60 So. 3d 514, 518-19 (Fla. Dist. Ct. App. 2011).

"Stacked" UM coverage is expansive and generally provides protection whenever the insured is injured by an uninsured motorist. *Coleman v. Fla. Ins. Guar. Ass'n, Inc.*, 517 So. 2d 686, 689 (Fla. 1988). People who have "stacked" UM benefits are covered in all scenarios because "stacked" UM coverage follows the insured "whenever or wherever bodily injury is inflicted upon [the insured] by the negligence of an uninsured motorist." *Id.* (quotation and emphasis omitted). It is this "whenever or wherever" aspect of "stacked" UM coverage which also gives rise to the practice of aggregating or "stacking" UM coverage limits when an insured has purchased multiple insurance policies. *Id.* Thus, when multiple UM

4

coverages overlap, the insured "may stack a number of uninsured motorist coverages equal to the number of coverages for which he paid a premium." *Id.* at 690; *see also Collins v. Gov't Emps. Ins. Co.*, 922 So. 2d 353, 355 (Fla. Dist. Ct. App. 2006) ("[S]tacked uninsured coverage enables the insured to stack the coverage for one owned automobile onto the coverage of another owned automobile.").

By contrast, "non-stacked" UM coverage applies in a narrower set of circumstances. In exchange for a less expensive premium, "non-stacked" UM coverage "only provides coverage for the vehicle on which the UM premium was paid." *Swan*, 60 So. 3d at 518; Fla. Stat. § 627.727(9)(e) (requiring that "non-stacked" UM coverage premiums be discounted by at least 20 percent). As a result, the policy limits of "non-stacked" UM coverage generally do not aggregate. Rather, "non-stacked" UM coverage only protects the insured when he or she is injured while driving the covered vehicle. *See Swan*, 60 So. 3d at 518.

With these principles in mind, we consider each of Brannan's claims in turn.

### III.

#### A. Breach of Contract, Declaratory Relief, and GEICO's Counterclaim

In his Auto Policy, Brannan expressly elected "non-stacked" UM coverage on his three automobiles in exchange for a reduced premium. As such, GEICO only had an obligation to provide UM benefits under the Auto Policy if Brannan

was injured while driving one of his three automobiles. *See id.* Because Brannan was injured while driving his motorcycle, GEICO owed no UM benefits under the terms of the Auto Policy.

Brannan counters that he is entitled to "stack" the UM coverage from his Auto Policy because he paid for "stacked" coverage on his Motorcycle Policy. We disagree. As Florida courts have explained, "stacking" occurs when an insured has purchased multiple insurance policies that independently provide overlapping UM coverage over a particular accident. *See Coleman*, 517 So. 2d at 689. Here, Brannan purchased only one insurance policy that applies—the Motorcycle Policy. The Auto Policy, however, does not apply because "non-stacked" UM coverage only applies when the insured is injured while driving a covered vehicle, and Brannan was not injured while driving one of his automobiles. *See Swan*, 60 So. 3d at 518.

Contrary to Brannan's assertion, the unavailability of another policy against which to stack the UM benefits under the Motorcycle Policy does not render that contract illusory. Florida courts have expressly rejected this argument, noting that stacked coverage, such as available under the Motorcycle Policy, carries "a very valuable benefit . . . beyond just the ability to aggregate UM benefits." *Id.* at 519 (citation omitted); *see also Collins*, 922 So. 2d at 355 (rejecting an insured's claim that she was entitled to a return of her stacked UM premium for the years she

owned only one automobile because, absent the ability to aggregate or stack coverage with another vehicle, she received no benefit for the higher premium paid for stacked coverage).  In *Collins*, the state court explained:

> Section 627.727(9)(a)-(e) delineates the limitations in uninsured motorist coverage, in addition to the limitation of not being able to stack the coverage from one vehicle onto another, when non-stacked insurance is obtained for a twenty percent decrease in premium. When the insured purchases stacked coverage, the limitations of section 627.727(9)(a)-(e) do not apply thereby giving the insured certain benefits for the twenty percent additional premium even when only one vehicle is owned.

*Collins*, 922 So. 2d at 355.  Here, Brannan's Motorcycle Policy provided benefits unavailable under a non-stacking policy.  Specifically, the Motorcycle Policy entitled Brannan to UM benefits even in the event that he was operating a different vehicle than the motorcycle insured under that policy.

Under the terms of the Motorcycle Policy, Brannan was entitled to $10,000 in UM benefits.  Because there is no dispute that Indemnity paid out this amount, the magistrate judge properly granted summary judgment against Brannan's breach-of-contract claim and his request for declaratory relief, as well as in favor of GEICO's counterclaim.

B.  Negligence

Brannan's execution of a valid UM selection form (M-9 form) rejecting stacked coverage under his Auto Policy bars his claim that the defendants should be held liable under a theory of negligence because they failed to advise him about

the extent of his stacking UM coverage under the Motorcycle Policy.  *See* Fla. Stat. § 627.727(1) (requiring that UM coverage be applicable to all, unless "an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy").

At the time Brannan executed the M-9 form,[2] the statute provided: "If this form is signed by a named insured . . . it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations . . . ."  Fla. Stat. § 627.727(9)(e); *see also Mitleider v. Brier Grieves Agency, Inc.*, 53 So. 3d 410, 412 (Fla. Dist. Ct. App. 2011) ("The presumption created by § 627.727 cannot be rebutted by testimony that the person signing the rejection form did not read it") (quotation omitted).  Thus GEICO had no duty to advise Brannan of the stacking limitations under his Auto Policy, and his negligence claim fails.

C.  Fla. Stat. § 627.4137

Lastly, Brannan alleges that the defendants failed to provide him with accurate, truthful, and timely policy information as required under Florida law. *See* Fla. Stat. § 627.4137(1) (requiring the disclosure of certain insurance information, including the limits of liability coverage, within 30 days of receipt of

---

[2] Brannan challenges the magistrate judge's decision to take judicial notice of the M-9 form associated with his Auto Policy based on recent contested revisions to the form.  But the version in effect at the time Brannan signed the M-9 form in 2009 had been approved by the State Florida Office of Insurance Regulation.  *See Menendez v. Progressive Express Ins. Co., Inc.*, 35 So. 3d 873, 876 (Fla. 2010) (highlighting that insurance policy documents are governed by the laws in effect at the time the policy was executed).

such a request).  But Brannan fails to point to any legal authority to show that §

627.4137 creates a first-party private cause of action against an insurer.  *Cf.*

*Lucente v. State Farm Mut. Auto. Ins. Co.*, 591 So. 2d 1126, 1127-28 (Fla. Dist. Ct.

App. 1992) (noting that § 627.4137 "does not contain an implicit cause of action

for a third party against an insurance company[,]" and even if it did, such a claim

could not be raised unless or until the claimant had obtained a judgment against the

insured).

Even assuming a first-party cause of action existed, Brannan's argument

fails.  Florida law charges a first-party insured, such as Brannan, with knowledge

about the terms and conditions of his insurance policies, including applicable

coverage limits.  *See e.g., State Farm Auto. Ins. Co. v. St. Godard*, 936 So. 2d 5,

10-11 (Fla. Dist. Ct. App. 2006) ("As parties to these contracts of insurance,

themselves, [the insureds] are charged with knowledge of the contents and bound

by the terms . . .).

In sum, we conclude that the magistrate judge properly granted summary

judgment in favor of the defendants because Brannan was not entitled to any

additional UM benefits beyond the $10,000 he received under the terms of his

Motorcycle Policy.[3]

---

[3] Brannan also argues that the magistrate judge's order granting summary judgment to the
defendants should be overturned because it "is contrary to sound principles of Florida public
policy."  We generally do not consider arguments raised for the first time on appeal.  *See Ledford*

9

**AFFIRMED.**

---

*v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011).  Nevertheless, we find no merit to Brannan's contention.