617 So.2d 817 (1993)
TEACHERS INSURANCE COMPANY, Appellant,
v.
John W. BOLLMAN, Sr. and Carol Bollman, Appellees.
No. 92-02345.
District Court of Appeal of Florida, Second District.
April 30, 1993.
*818 George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant.
Alfred J. Tetlow of Mac A. Greco, Jr., P.A., Tampa, and Elizabeth S. Wheeler of Berg & Wheeler, P.A., Brandon, for appellees.
FRANK, Judge.
On July 20, 1991, Mr. and Mrs. Bollman were injured in an accident involving an uninsured motorist. The Bollmans filed a declaratory judgment action against Teachers Insurance Company, their insurer, seeking a determination that they were entitled to uninsured motorist coverage (UM) in the amount of $310,000 each, a figure reached by combining the available coverage in four policies they had purchased from Teachers. The trial court, without explicating the reason for its determination, entered a summary judgment in favor of the Bollmans, commenting that "I'm going to let you all take it up with the Second District Court and let them tell you that I am right." The trial court, however, was wrong, and we reverse.
Mrs. Bollman testified in her deposition that she had discussed the option of stacking or not stacking coverage with her insurance agent. Although the Bollmans had at an earlier time selected stacked UM coverage, when the rates increased and when it became necessary for them to insure two teenage drivers, they determined to change to non-stacked coverage to reduce costs. Thus, on October 31, 1989, Mrs. Bollman directed a memorandum to her agent containing the following language: "Please change the following policies from stacked coverage to unstacked as discussed last week on the telephone." Mrs. Bollman's communication not only rejected "the coverage in writing," within the meaning of section 627.727(1), Florida Statutes (1991), but also manifested a knowing rejection of stacked coverage. See Bryon v. The Travelers Indemnity Company of Illinois, 601 So.2d 1330 (Fla. 2d DCA 1992); Adams v. Aetna Casualty & Surety Company, 574 So.2d 1142 (Fla. 1st DCA 1991); Chmieloski v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania, 563 So.2d 164 (Fla. 2d DCA 1990). The fact that Mrs. Bollman's written rejection was not on a statutorily prescribed form does not undermine its effect, i.e., "demonstrating a knowing rejection of uninsured motorist coverage." Muhammed v. Allstate Insurance Company, 582 So.2d 768, 769 (Fla. 3d DCA 1991). In any event, Mrs. Bollman conceded that by this election she knew that UM protection would be limited to $100,000 per person per accident.
Further eradicating any question of the Bollmans' understanding of their contractual entitlement is the fact that portions of the policies attached to the complaint disclose the designation "JN" next to the UM coverage provision. The policy explains that the symbol "JN" means that the insured has chosen non-stacking coverage and the maximum amount of compensable protection will be measured by the provision that:
If two or more vehicle liability policies issued by us to you apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.
The foregoing paragraph further states, "This does not apply to Coverage JS." In short, it cannot be gainsaid that the insured is unmistakably informed that stacking is present only in policies with designated coverage "JS." Nonetheless, before the trial court and in the present proceeding the Bollmans' attorneys have urged and laid great stress upon a claimed distinction between "stacking" and "aggregating" coverage. Hence, say the Bollmans, in *819 their effort to overcome the effect of their express rejection of stacked coverage, if we are foreclosed from the benefit of "stacking" by our decision not to stack, we are not barred from enlarging our UM coverage through "aggregation." They claim that although "stacking" is confined to a single policy insuring multiple vehicles, a circumstance not present in this matter, "aggregating" necessarily results from multiple policies, such as are found in this case, each insuring a single vehicle. The Bollmans' notion of aggregating coverage seems to derive from the comment in Allstate Insurance v. Piatt, 417 So.2d 705, 706 (Fla. 3d DCA 1982), that the "[a]ggregation of coverage, despite the anti-stacking statute, is permitted where multiple policies are involved." Apart from a mechanical application of the foregoing language, we find nothing in Piatt, the statute, or other decisions composing the history of litigation associated with UM coverage, warranting the view the Bollmans seek to have us accept.[1] Indeed, the principal authority relied upon by the court in Piatt was South Carolina Insurance Co. v. Kokay, 398 So.2d 1355 (Fla. 1981). Kokay, like Piatt, arose prior to October 1, 1980, the effective date of the amendment to the anti-stacking statute, and speaks only to "stacking." It does not use the words "aggregate" or "aggregating." Thus, in spite of the anti-stacking statute in effect when Piatt was published, the opinion stands for nothing more than the permissible practice of combining coverage if multiple policies, with different named insureds, exist. In the version of the statute affecting the results in Piatt and Kokay, however, there was specific provision for an exception to "insurance policies insuring different named insureds." Section 627.4132, Fla. Stat. (1977). Neither Piatt nor Kokay, however, can be read to mean that aggregating the UM coverage must follow from the mere fact that the insurer has issued multiple policies.
In sum, the record reflects that the Bollmans and Teachers entered into a contract compatible with section 627.727, Florida Statutes (1991). They chose and received non-stacked UM coverage allowing Teachers to offer the non-stacked option for a minimum twenty percent reduction in premium. Thus, there is no basis for the trial court's conclusion that the Bollmans were entitled to UM coverage in the amount of $310,000 per person.
Accordingly, the partial summary declaratory judgment is reversed, and we remand this cause to the trial court for entry of a judgment declaring that the Bollmans are entitled to UM coverage in the amount of $100,000 per person for the accident which occurred on July 20, 1991.
LEHAN, C.J., and PARKER, J., concur.
NOTES
[1] See Florida Farm Bureau Casualty Co. v. Hurtado, 587 So.2d 1314 (Fla. 1991), for a comprehensive analysis of the history of "stacking" in Florida.