959 So.2d 365 (2007)
James R. THERRIEN, Appellant,
v.
Barry LARKINS a/k/a Barry Larkins, LLC, Appellee.
No. 5D06-2052.
District Court of Appeal of Florida, Fifth District.
June 8, 2007.
Richard D. Sierra, of Kosto & Rotella, P.A., Orlando, for Appellant.
Stephen R. Ponder of Van Houten, Ponder & Hahl, P.A., Daytona Beach, for Appellee.
*366 EVANDER, J.
The seller, James Therrien, appeals from a final judgment granting specific performance of a purchase contract in favor of the buyer, Barry Larkins. Because we believe the trial court improperly interpreted the contact, we reverse.
The material facts are relatively undisputed. On July 26, 2004, Therrien and Larkins entered into a written contract whereby Larkins agreed to purchase certain real property from Therrien for $564,000. The property was encumbered by a mortgage, which Therrien had the obligation to satisfy.
The contract required the payment of two non-refundable deposits totaling $21,000. Paragraph II(g) of the contract provided that the balance of the contract amount ($543,000) was to be paid at closing "by cash or locally drawn cashier's or official bank check(s) . . ." However, paragraph IV(d) titled "seller financing" was check marked and referenced the contract addendum. The addendum was apparently drafted by a broker who was not an agent of either party.[1]
Addendum paragraphs 3 and 4 are the crucial paragraphs in this case. These paragraphs read as follows:
3. If buyer does not close by January 26th, 2005 the buyer is to pay seller 12% interest, which is to be paid monthly. Failure to do so makes this contract null and void, and all monies paid are nonrefundable.
4. Seller will only carry a mortgage for an additional six months from January 26th, 2005.
Larkins timely paid the $21,000 of non-refundable deposits. At closing, Larkins tendered to Therrien a note and mortgage executed by Westview Place, LLC, for the balance of the monies owed under the contract. Westview Place, LLC, was a limited liability corporation solely owned by Larkins. The purchase contract permitted Larkins to assign the contract provided Larkins remained liable under the contract.[2]
Therrien refused to close because Therrien did not believe the contract permitted Larkins to purchase the property by tender of a note and mortgage. Larkins subsequently filed a two-count complaint against Therrien for Therrien's alleged wrongful failure to convey the property. Count I was for specific performance and Count II was for monetary damages.
It is Larkins' position that the contract provided him with three options at closing. First, Larkins could tender the balance of the purchase price by cash, cashier's check or official bank check. Second, pursuant to addendum paragraph 3, Larkins could obtain a six (6) month extension to close by paying monthly payments at 12% interest on the purchase price. Third, addendum paragraph 4 granted Larkins the right to tender a six (6) month promissory note and mortgage as "payment" of the purchase price.
Therrien contends the contract provided Larkins with only two options at closing. It was Therrien's position that the contract did not grant Larkins the right to tender a note and mortgage as "payment" of the purchase price.
The trial court accepted Larkins' argument and entered a final judgment requiring *367 Therrien to convey the real property to Larkins.
This court's review of the trial court's interpretation of the contract is subject to a de novo standard of review. Whitley v. Royal Trails Property Owners' Ass'n, Inc., 910 So.2d 381 (Fla. 5th DCA 2005). The interpretation of a contract is a question of law, and an appellate court may reach a construction contrary to that of the trial court. Id. at 383 (citing Inter-Active Servs., Inc. v. Heathrow Master Ass'n, Inc., 721 So.2d 433, 434 (Fla. 5th DCA 1998)).
In this case, it is undisputed that at the scheduled closing, Larkins did not tender cash, a cashier's check, or an official bank check. Furthermore, Larkins did not allege in his complaint that Therrien wrongfully refused to grant him a six (6) month extension of the closing date.[3] Thus, the primary issue in this case is whether the purchase contract required Therrien to accept a six (6) month note and mortgage as "payment" of the purchase price.
The parties disagree as to whether addendum paragraph 4 should be construed in conjunction with addendum paragraph 3, or whether the two paragraphs should be construed independent of the other.
In construing a written contract, every provision should be given meaning and effect and apparent inconsistencies reconciled if possible. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla.1979). A reasonable interpretation of a contract is preferred to an unreasonable one. Id.
We agree with Therrien that addendum paragraphs 3 and 4 must be construed together. By doing so, we conclude the intent of the two paragraphs was to provide that if Larkins was unable or unwilling to close on the property by January 26th, 2005, he would have the right to extend the closing date for an additional six months, provided he made monthly payments to Therrien of 12% interest of the purchase price. Therrien would remain obligated to make payments on the existing mortgage encumbering the property for this six-month period.
By contrast, we believe it would be unreasonable to construe paragraphs 3 and 4 as providing separate and independent options to Larkins. As previously noted, Larkins contends that paragraph 3 granted him the right to extend the closing date provided he made monthly interest payments and paragraph 4 granted him the alternative right to make "payment" at closing by tendering a six (6) month note and mortgage. However, standing alone, neither paragraph is complete. Paragraph 3 fails to state the length of time for which Larkins can extend the closing date. Paragraph 4 fails to state the interest rate, dates of payments, or payment amounts on any note to be given to Therrien.
Indeed, at the scheduled closing, Larkins implicitly recognized that paragraphs 3 and 4 must be construed together because he tendered a six (6) month balloon note at 12% interest with interest only payments to be made on a monthly basis. The six (6) month term was apparently derived from paragraph 4, while the 12% interest rate with interest only payments *368 being made monthly was apparently derived from paragraph 3.
Unfortunately for Larkins, the first words in paragraph 3 are "[i]f buyer does not close by January 26th, 2005." Thus, reading paragraphs 3 and 4 together, the mortgage referenced in paragraph 4 must refer to the existing mortgage encumbering the property because obviously Therrien would not be holding a mortgage from Larkins (or Westview) if a closing did not occur. Therefore, it is clear that addendum paragraph 4 did not grant Larkins the right to tender a six (6) month note and mortgage at closing as "payment" of the purchase price.
In conclusion, Larkins had two options available to him at the scheduled closing. First, he could proceed with the closing by paying the balance of the purchase price by cash, cashier's check, or official bank check. Second, he could obtain an extension of the closing for up to six (6) months provided he made monthly payments of 12% interest on the purchase price. Larkins did neither. Instead, Larkins tendered a six (6) month balloon note and mortgage executed by Westview. Therrien was not obligated to accept this note and mortgage. Larkins failed to prove he was ready, willing and able to perform the contract. Taylor v. Richards, 32 Fla. L. Weekly D1538, ___ So.2d ___, 2007 WL 1755803 (Fla. 4th DCA June 20, 2007); see also Hollywood Mall, Inc. v. Capozzi, 545 So.2d 918 (Fla. 4th DCA 1989). Accordingly, final judgment should have been entered in favor of Therrien.
REVERSED and REMANDED with Directions to Enter Final Judgment for Appellant.
ORFINGER, J., concurs.
PLEUS, C.J., concurring specially in part, dissenting in part, with opinion.
PLEUS, C.J., concurring in part, dissenting in part, with opinion.
Save for the issues of the deposit and attorney's fees, I agree with the result, albeit for a different reason. The written document (I hesitate to call it a contract), particularly paragraphs 3 and 4 of the addendum, is so ambiguous as to the terms and conditions for closing that it must be concluded that the parties never reached a meeting of the minds regarding that crucial term. If you were to sit ten judges in a room and ask them to interpret the contract, you would likely get ten different interpretations of what was meant.
My problem with the majority opinion is that it interprets a "contract" which is impossible to interpret with any confidence as to paragraphs 3 and 4 of the addendum. Conclusions with any degree of certainty about the intent of the parties are beyond comprehension. Specifically, paragraph 3 allows the buyer to make monthly interest payments apparently to extend the closing date if the closing does not occur on or before January 26, 2005, but says nothing about a note and mortgage securing payment of such sums or as to the duration of these monthly payments. Further, what does paragraph 4 of the addendum mean when it states, "Seller will only carry a mortgage for an additional six months from January 26, 2005."? What mortgage is referenced by this language? The existing mortgage on the property? Or rather does it constitute the seller's agreement to accept a note and mortgage covering six months of monthly interest payments due under paragraph 3 so that the transaction can close? Or does it all mean something else? The trial court attempted to make a "reasonable" reading of the two paragraphs, as does the majority. However, the real problem is that the vague language employed in paragraphs 3 and 4 makes it impossible to conclude that the *369 parties reached a meeting of the minds regarding the terms and conditions applicable to the closing.
In King v. Bray, 867 So.2d 1224 (Fla. 5th DCA 2004), this Court was faced with a similar dilemma. The prospective buyers of real property brought action for specific performance against the sellers. The trial court denied specific performance and this Court affirmed, holding the contract was not enforceable.
Writing for this Court in King, Judge Sawaya noted that specific performance may be denied when a contract is unenforceable because, based on an ambiguity in the contract, the parties never reached a meeting of the minds regarding essential terms of the agreement. After concluding that the contract was ambiguous, the trial court determined that the parties never formed an enforceable contract because, based on their different views of what the contract meant, they never arrived at a meeting of the minds. "It is well established that a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract. . . ." 867 So.2d at 1227, quoting from Greater New York Corp. v. Cenvill Miami Beach Corp., 620 So.2d 1068, 1070 (Fla. 3d DCA 1993).
Based on King, the absence of the requisite meeting of the minds on the essential element of the terms and conditions applicable to closing renders this contract judicially unenforceable. Accordingly, I would reverse as to the grant of specific performance, order a return of the $21,000 deposit, and find no basis for any recovery of attorney's fees.
The contract and addendum in this case were drafted by transactional broker Ted Rugg on a FARBAR form. This lawsuit is an excellent example of why lawyers, and not brokers, should draft contracts in complex real estate transactions. As a transactional broker, Rugg owed a fiduciary obligation to both seller and buyer. He served neither.
Had Ted Rugg suggested that an experienced real estate attorney draft the contract, he might now be enjoying the $22,500 commission called for in one of the less ambiguous clauses of the contract.
NOTES
[1] The broker's testimony as to the intent of the contract addendum was consistent with Therrien's position.
[2] We find it unnecessary to address the issue of whether Larkins was also required to have tendered a personal guarantee on the note given by Westview.
[3] There was evidence presented at trial that Larkins did propose that the closing date be extended for six months with Larkins paying monthly payments of 12% interest of the purchase price. However, Larkins conditioned this offer on Therrien placing the $21,000 of deposits previously paid into an escrow account. Therrien, as he had a right to do, rejected this proposed modification of the contract. The purchase contract specifically provided that the $21,000 of deposits was non-refundable.