# Third District Court of Appeal

## State of Florida

Opinion filed November 29, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1132
Lower Tribunal No. 06-26218
_____

**Merco Group at Akoya, Inc.,**
Appellant,

vs.

**General Computer Services, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, Judge.

Billbrough & Marks and Geoffrey B. Marks, for appellant.

Arthur J. Morburger; John C. Mullin, Jr., for appellee.

Before LAGOA, EMAS and SCALES, JJ.

EMAS, J.

**INTRODUCTION**

Merco Group at Akoya, Inc. (Merco Group), the defendant below, appeals from a final judgment in favor of plaintiff, General Computer Services (GCS), following a jury trial on damages only,[1] on GCS's claim for breach of contract. We reverse and remand for a new trial, because the trial court's construction of the terms of the underlying contract resulted in erroneous evidentiary rulings and prevented the jury from considering relevant evidence on the issue of damages.

**FACTS AND BACKGROUND**

The Akoya is a high-rise residential condominium that was completed in 2005. Merco Group at Akoya was the developer of the project. In 2003, GCS met with Merco Group and advised that it had a computer system which would increase the value of the Akoya property. The computer system would provide internet cabling and software to allow communication between the condominium units, front desk, valet parking, and other areas outside the building (such as doctors, dry cleaners, cafeterias and other services). GCS's computer system was

---

[1] In an earlier appeal, Merco Group appealed the trial court's order denying its motion to vacate a default final judgment awarding damages to GCS. See Merco Grp. at Akoya, Inc. v. Gen. Comput. Servs., 45 So. 3d 971 (Fla. 3d DCA 2010). We affirmed the trial court's order insofar as it denied the motion to vacate the default judgment, but reversed that portion of the final judgment awarding damages. We remanded for a trial on damages only, holding that the damages claim was unliquidated and required a factual determination. Id.

called the BeCruising System.  In September 2003, the parties entered into a contract.

The written contract between the parties provides in pertinent part:

## Contract

This *service* contract is entered by Merco Group (Client) and/or its successors . . . and General Computer Services Inc. (GCS) . . . .

**I - GCS will offer the following products and/or services:**

1) GCS will provide one computer system and the Becruising System software for each unit subscribing to our Becruising System.

2) GCS will provide additional hardware required for the Becruising System (i.e. System Components for Concierge service and Valet Parking services).  These two systems total $3000.00. Paid for by the Client and/or its successors.

3) GCS will provide two printers required for the Concierge service and Valet Parking services as a courtesy, at no cost to the Client and/or its successors.

**II - The Client will commit itself to the following points:**

1) *The Client and/or its successors will commit, thru its own sales force and within its main showroom, to illustrate and sell Becruising System to all owners and possible buyers.*[2]

2) The Client and/or its successors will purchase any additional hardware required for the Becruising System (i.e. System ~~Components for~~ Concierge service and Valet Parking services).

[2] Merco Group had already been selling condominium units prior to the date the parties entered into this contract; therefore, the contract included sales of the BeCruising System to existing condominium unit owners as well as prospective buyers of condominium units.

3

This may include any hardware items needed by the Client and/or its successors to implement the Becruising System and the Becruising System Services (currently the Concierge service and Valet Parking services, etc.). These two systems total $3000.00. Paid for by the Client and/or its successors before installation.

3) *The price per system for each computer with the Becruising System software installed is $3900.00 per unit, payable to GCS. The Client and/or its successors, and/or the Salesperson, will collect, on beha[lf] of GCS, full payment from each owner at the time of sale. Full payment from unit owners for each individual system sold is due upon execution of sale by the Client and/ or its successors, and/or the Client's Salesperson. Checks collected from the Client and/or its successors, and/or the Client's Salesperson for each sale are to be picked up by GCS daily.*

## III – Payment Form:

1) This contract will commence upon signing by both parties.

2) **Client's Commissions:** The Client and GCS agree that *for each complete Becruising System sold by the Client* and/or its successors and the Client's sales force, *to unit owners and new buyers, a sales commission of $1000.00. Commissions will be paid each month for systems sold the previous month*.

3) **Salesperson's Commission:** *The Client and GCS agree that for each complete Becruising System sold by the Client and/or its successors and the Client's sales force, to unit owners and new buyers, a sales commission $200.00 to the Salesperson. Commissions will be paid each month for systems sold the previous month.*

4) **Cancelled Sales**: *Any commissions earned on sales voided by individual unit owners will be credited back to GCS. If commissions have been paid on a voided sale, all commissions for said sale must be returned to GCS by the Client and/or its successors, and the Client's Salesperson.*

**IV - General Agreement:**

1) Any extra cost for upgrades required by the individual unit owners, will be charged directly to each owner at the prices negotiated between GCS and each individual owner based on each owner's own requirements. Said upgrades will only be done under a signed contract and is to be paid for before any work is commenced.

(Italics and underlining added.)

One month later, the parties executed an addendum to the contract:

### Contract Addendum

This is an addendum to the contract signed on September 10, 2003 between Merco Group at Akoya Inc. (the client). . . and General Computer Services Inc. (GCS) . . . .

Both parts [sic] agree as follow:

1. **Property:** The equipment Tablet PC Serial Number OP024600121 View Sonic Tablet PC v 1 100 model vsmw24888-lw (from now on the equipment) is a property of General Computer Services Inc.

2. **Location:** The equipments [sic] will be in the sales center in the trailer to be seen by owners of the apartments of Akoya Buildings and new buyers.

3. **Responsibility:**

    a. The equipment will be under the protection of the client and if the equipment is damaged or lost the client will pay General Computer Services Inc $2900.00.

    b. Only General Computer Services Inc. will be

5

able to use the equipment to make demonstrations in other locations outside the trailer.

    c.    The product cannot be taken out of the trailer unless General Computer Services Inc. gives written consent to Merco Group at Akoya Inc.

4. *The client agrees to promote exclusively the BeCruising System in the Akoya Building.* This is an Information System based on software that communicates the apartments with the front desk, valet parking, and other public areas of the building that can be included later in the system and with other services outside the building with the objective to serve the residents and the management of the building. Also the BeCruising Systems can manage the security camera system for the apartments and the building certified by General Computer Services Inc.

(Italics and underline added.)

Prior to trial, the parties entered into a written stipulation, which Merco Group sought to read to the jury: "Unit owners and potential purchasers . . . were not obligated to purchase the BeCruising smart system from General Computer Services, Inc." Nonetheless, at trial, GCS argued, and the trial court agreed, that under the terms of the parties' contract, Merco Group was *obligated* to sell the GCS computer system, at a cost of $3900 per system, to every individual purchasing a condominium unit at Akoya (as well as to existing condominium unit owners).

Accordingly, although GCS voluntarily entered into the pre-trial stipulation, it objected when Merco Group sought to introduce the stipulation into evidence

during trial.[3]  The trial court sustained the objection, finding that such evidence would merely confuse the jury because whether unit owners were obligated to buy the system, and whether Merco Group <u>in fact</u> sold any of the computer systems, was irrelevant to the question of damages suffered by GCS.  The trial court also excluded or otherwise limited certain testimony from Merco Group's witnesses regarding how many computer systems were actually sold to unit owners.

Thus, GCS contended at trial the damages to which it was entitled under the contract could be calculated in rather straightforward fashion by multiplying the number of condominium units by the cost of each computer system.  The jury returned a verdict in favor of GCS on the breach of contract claim and awarded damages in the amount of $1,360,800.[4]

**ANALYSIS**

The construction of the terms of a contract is subject to de novo review.  <u>See</u> <u>NCP Lake Power, Inc. v. Fla. Power Corp.</u>, 781 So. 2d 531, 536 (Fla. 5th DCA 2001) (holding: "The interpretation of a contract is a question of law and,

---

[3] <u>See</u> Fla. Std. J. Inst. (Civ.) 301.1d. (the following standard jury instruction is to be given to the jury before a stipulation is read into evidence: "Members of the jury, the parties have agreed to certain facts.  You must accept these facts as true. (Read the agreed facts)."

[4] There was some dispute regarding the actual number of condominium units and whether certain "cabana units," or only residential condominium units, should be included in the calculation of damages.  Also, there were some setoffs (e.g., the "commissions" payable for the sale of each unit), as well as other payments previously made by Merco Group to GCS.

7

therefore, we are not bound by the conclusions reached by the trial court regarding construction of the [c]ontract"). Evidentiary rulings are reviewed under an abuse of discretion standard. Linde v. Linde, 199 So. 3d 1102, 1104 (Fla. 3d DCA 2016).

We read the contract and the addendum together, and construe the contract as a whole in determining the agreement of the parties. See Therrien v. Larkins, 959 So. 2d 365, 367 (Fla. 5th DCA 2007). A review of this contract clearly illustrates that Merco Group did not guarantee the sale of a computer system to every individual condominium unit owner. Rather, reading the contract and contract addendum as a whole, it is plain that Merco Group agreed to exclusively promote GCS' BeCruising System and use its best efforts in selling that system to each individual purchasing a condominium unit at Akoya. Were we to construe the contract as urged by GCS, Merco Group would in essence be obligated to pay GCS for a BeCruising System for each condominium unit, regardless of whether the unit owner actually bought the system. If this were so, it would require us to ignore in the contract the provision regarding "Cancelled Sales" (section III (4)), which provides:

> **Cancelled Sales**: Any commissions earned on sales voided by individual unit owners will be credited back to GCS. If commissions have been paid on a voided sale, all commissions for said sale must be returned to GCS by the Client and/or its successors, and the Client's Salesperson.

In addition, under the construction urged by GCS, and adopted by the trial court, the provision in section III (2) that a $1000 commission would be paid "for each complete Becruising System sold by the Client" and that such commissions are to "be paid each month for systems sold the previous month," would be superfluous.

Our review of these and other provisions in the contract leads us to conclude that Merco Group did not agree to guarantee the sale of, or be responsible to pay GCS for, a BeCruising System for every individual who purchased a condominium unit[5] regardless of whether that condominium owner actually bought the BeCruising System.

Given our construction of these terms of the contract, it necessarily follows that the pretrial stipulation was relevant to the question of damages allegedly suffered by GCS as a result of the breach.[6] The trial court abused its discretion in

---

[5] As indicated at note 2 *supra*, Merco Group had already been selling condominium units prior to the date the parties entered into this contract; under GCS's proposed construction of the contract, Merco Group would also have been obligated to pay GCS for each (unsold) BeCruising System for these existing unit owners as well.

[6] Merco Group invites this court to reach the question of what the proper measure of damages *should* be, and further urges us to hold that the case should have been tried upon a damages theory of lost profits. We decline the invitation, as we need not and therefore do not, reach this question, but instead limit our holding to the construction of that portion of the contract necessary to our decision, and address only the erroneous evidentiary rulings that flowed from the trial court's construction of the contract.

9

excluding the stipulation that unit owners and potential buyers were not obligated to purchase the BeCruising smart system from General Computer Services,[7] and in limiting, as irrelevant, the testimony of Merco Group's witnesses regarding the number of sales of the BeCruising System.

We therefore reverse the judgment and remand for a new trial on damages.[8]

REVERSED AND REMANDED.

---

[7] As a matter of policy, the law encourages and upholds stipulations, which serve to narrow the issues and expedite the resolution of disputes. A stipulation properly entered into, and relating to a matter to which it is appropriate to stipulate, is binding upon the parties and should be strictly enforced by the court. LPI/Key West Assocs., Ltd. v. Beachcomber Jewelers, Inc., 77 So. 3d 852 (Fla. 3d DCA 2012). A party seeking relief from a pretrial stipulation must make a reasonable motion to withdraw the stipulation supported by a showing of good cause. Id. at 855; Lopez v. Dublin, 489 So. 2d 805, 807 n. 3 (Fla. 3d DCA 1986).

[8] We note in passing that GCS had also sought damages on a quantum meruit theory, and the jury returned a verdict of $699,611 in favor of GCS on that claim as well. Posttrial, Merco Group filed a motion for remittitur of the quantum meruit award. The trial court reduced the amount of that award, but Merco Group objected to the amount of the remitted award, and the trial court granted a new trial on damages as to the quantum meruit claim. Thereafter (and before the notice of appeal was filed with this court), GCS voluntarily dismissed the quantum meruit claim. Therefore, on remand, only the count for breach of contract remains pending for a new trial on damages.