SCALES, J.
*345 Appellants, defendants below, Geico Indemnity Company and Geico General Insurance Company (collectively, "GEICO") appeal four final judgments[1] entered against GEICO after a jury determined that GEICO's insured, appellee and plaintiff below, Ricardo Perez, had been severely injured due to the negligence of an underinsured motorist. GEICO also appeals the trial court's interlocutory orders denying GEICO's summary judgment motions on the issue of whether Perez was entitled to uninsured/underinsured motorist ("UM") coverage under his automobile policy. While we affirm the trial court's denial of GEICO's summary judgment motions, we reverse for a new trial on UM coverage because the trial court erred by excluding probative, admissible evidence on the issue of whether Perez had made a knowing, written rejection of UM coverage.
I. RELEVANT FACTS AND PROCEDURAL BACKGROUND
A. Perez's procurement of the policy
In April 2013, Perez called GEICO and spoke with a sales representative about purchasing automobile insurance for three vehicles that Perez owned. At the time of the call, Perez had a motorcycle policy with GEICO that included UM coverage limits of $10,000, but his vehicles were insured by another insurance carrier. There is no recording of this phone call and, understandably, the GEICO sales representative has no independent recollection of the call.
GEICO's sales representative, though, testified that the normal practice of GEICO is to discuss, explain and recommend that the customer purchase UM coverage, at which point the customer must inform GEICO whether the customer wants to purchase or reject UM coverage. If the customer declines UM coverage, the customer is told the customer must sign a UM form rejecting UM coverage by midnight, or GEICO will unilaterally add UM coverage to the policy. Perez testified that the sales representative never discussed UM coverage with him on this April 2013 phone call.
During the phone call, Perez provided GEICO with his wife's email address. At the conclusion of the call, a unique and secure personal identification number ("PIN") was generated by GEICO and a "welcome email" was sent to Mrs. Perez's email address. This welcome email provided that Perez could create an online account using the unique and secure PIN.
Later, GEICO's welcome email was forwarded from Mrs. Perez's email address to the Perezes' daughter's email address. At 7:52 p.m., an online GEICO account was created using the unique and secure PIN, and using the daughter's personal information as answers to two security questions. Minutes later, UM coverage was rejected for Perez's automobile policy via an electronic signature on GEICO's UM form, which was accessed by clicking through a series of webpages. The "review and sign" screen contained a blue hyperlink to an already completed UM form,[2] which rejected *346 UM coverage. This link, however, was never opened.
At 8:06 p.m., the online user viewed the coverage summary and logged off. At 8:08 p.m., an email was sent from the daughter's email address to Mrs. Perez's email address containing the coverage summary for Perez's automobile policy, which reflected no UM coverage. The next day, GEICO mailed the policy to Perez, which reflected liability coverage limits of $50,000 on each of the three insured vehicles, but no UM coverage. It is undisputed that Perez paid no premium for UM coverage on his automobile policy. Six months later, Perez renewed his automobile policy on the same terms.
B. Perez's accident and the instant UM lawsuit
On November 29, 2013, Perez was severely injured while operating his motorcycle when he collided with a Jeep driven by an underinsured driver. While GEICO offered Perez the full $10,000 limit of UM coverage under Perez's motorcycle policy, Perez declined GEICO's offer, and instead sought UM coverage under his automobile policy. Specifically, Perez sought UM coverage limits in the amount of $150,000, i.e., the full stacked UM benefit had UM coverage been provided under the automobile policy.[3] Maintaining that Perez had rejected UM coverage when he procured his automobile policy, GEICO denied Perez's UM claim on his automobile policy, and, in July 2015, the Perezes brought the instant action against GEICO and the underinsured driver.
In April and May 2016, GEICO filed two summary judgment motions, arguing that (i) Perez's automobile policy did not provide UM coverage to Perez while riding his motorcycle, and, alternately (ii) under section 627.727(1) of the Florida statutes (2013), GEICO was entitled to a conclusive presumption that Perez had rejected UM coverage under this automobile policy by virtue of the electronically signed UM rejection form. Perez filed a cross-motion for summary judgment, arguing, among other things, that (i) GEICO's online process for rejecting UM coverage was invalid because it did not comply with the requirements of section 627.727(1), and (ii) GEICO was not entitled to section 627.727(1)'s conclusive presumption that Perez had rejected UM coverage because GEICO's UM rejection form failed to comply with the statute.
On June 3, 2016, the trial court entered three separate summary judgment orders: two summarily denying GEICO's motions for summary judgment, and one granting, in part, Perez's cross-motion for summary judgment. In its order on Perez's cross-motion, *347 the trial court held that GEICO's UM rejection form "violates Florida statutory law" and that the "esignature process utilized by GEICO violates Florida Statutes, is ambiguous and did not provide proper notice to" Perez.
Though not set forth in the lower court's summary judgment orders, the hearing transcript reflects that the trial court limited the UM coverage issue for trial to whether Perez had made a knowing, oral rejection of UM coverage. In so ruling, the trial court rejected GEICO's argument that, even if GEICO was not entitled to section 627.727(1)'s conclusive presumption so as to prevail at the summary judgment stage, GEICO could nevertheless introduce the UM rejection form at trial to prove that Perez had knowingly rejected UM coverage in writing.
The case was set for trial, and the trial court bifurcated the trial into two phases. In the first phase, the issue for the jury was whether Perez had made a knowing, oral rejection of UM coverage; in the second phase, the issue for the jury would be the tort liability of the underinsured driver and Perez's damages.
C. Pre-trial evidentiary rulings
Prior to the phase one trial on the issue of whether Perez had made a knowing, oral rejection of UM coverage, Perez filed several motions in limine, seeking to limit the introduction of evidence to the April 2013 phone call between Perez and the GEICO sales representative. Specifically, Perez sought to exclude all evidence with respect to the electronically signed UM rejection form, including: the email exchanges between Mrs. Perez's email address and the daughter's email address; the creation of an online GEICO account using a unique and secure PIN, and use of the daughter's personal information as answers to two security questions; and the signed UM rejection form itself. Perez also sought to preclude GEICO from eliciting any testimony or introducing any evidence regarding matters outside Perez's April 2013 phone call to GEICO, including Perez's dealings with prior insurers in procuring automobile insurance and Perez's dealings with GEICO in procuring his motorcycle policy. In particular, Perez sought to preclude GEICO from eliciting any testimony or introducing any evidence regarding Perez's understanding of UM coverage and "regarding whether there were charges or payments concerning uninsured motorist coverage" in these other dealings. The lower court agreed with Perez and precluded GEICO from introducing any of this evidence. In addition, the lower court also precluded GEICO from introducing evidence that, following the April 2013 phone call, GEICO mailed Perez a copy of his automobile policy and, at Perez's subsequent request, GEICO also mailed a copy of the automobile policy's declaration page to Perez, both of which reflected no UM coverage.
D. The trial, verdicts, judgments and the instant appeal
In June 2016, after a three-day trial on phase one, the jury found in favor of Perez, answering "No" to the following question: "Did Plaintiff, Ricardo Perez, the named insured orally waive the statutory requirement of a written rejection by knowingly rejecting uninsured motorist coverage?"[4] The trial court entered a final *348 judgment in favor of the Perezes, concluding that the plaintiffs were entitled to stacked UM coverage under Perez's automobile policy (appellate case number 3D17-2317). Pursuant to the parties' stipulation, in August 2016, the trial court entered a final order of dismissal with prejudice as to the underinsured driver.
In May 2017, following another three-day trial on phase two, the jury found that the underinsured driver was one hundred percent at fault for the accident, awarding the Perezes $1,778,000 in damages. The trial court then entered a final judgment against GEICO in the amount of $150,000, the limit of stacked UM coverage under Perez's automobile policy (appellate case number 3D-2317). The trial court also entered a $17,122.29 judgment against GEICO for the taxable costs the Perezes incurred in the phase one trial (appellate case number 3D17-2407), and a $15,820.10 judgment against GEICO for the taxable costs the Perezes incurred in the phase two trial (appellate case number 3D17-2514).
GEICO timely appeals all four judgments as well as two of the trial court's three June 3, 2016 summary judgment orders (i.e., the two orders denying GEICO's summary judgment motions). GEICO also appeals certain evidentiary rulings made in both phases of the trial. We consolidated the appeals, and, as explained in more detail below, we affirm in part and reverse in part.[5]
II. STANDARD OF REVIEW
We employ several different standards of review in this case. We review de novo the trial court's denial of GEICO's summary judgment motions. Michele K. Feinzig, P.A. v. Deehl & Carlson, P.A., 176 So.3d 305, 308 (Fla. 3d DCA 2015) ("When the trial court resolves an issue by a grant of summary judgment, our review is ... de novo."); see also Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla. 2006) ("The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review."); Roberts v. Fla. Lawyers Mut. Ins. Co., 839 So.2d 843, 845 (Fla. 4th DCA 2003) ("The construction of an insurance policy to identify the scope of coverage is a question of law subject to de novo review on appeal."). We review the trial court's pre-trial evidentiary rulings under an abuse of discretion standard, see Merco Group at Akoya, Inc. v. Gen. Computer Servs., Inc., 237 So.3d 1052, 1056 (Fla. 3d DCA 2017), except we review de novo such evidentiary rulings to the extent they present pure questions of law. See Cruz v. State, 189 So.3d 822, 828 (Fla. 4th DCA 2015).
III. ANALYSIS
A. The trial court's orders denying GEICO's summary judgment motions
GEICO argues that the trial court erred by denying its motions for summary judgment. GEICO's argument is three-fold.
1. Perez's motorcycle is not a scheduled vehicle under Perez's automobile policy, but is covered by a separate GEICO motorcycle policy
First, GEICO argues that, as a matter of law, the automobile policy procured by Perez in April 2013 does not provide UM coverage to Perez because the *349 motorcycle Perez was operating at the time of the accident was not a scheduled vehicle under the automobile policy.
Specifically, GEICO points to the definitions and exclusions for "Section I - Liability" and "Section II - Personal Injury Protection" in the subject automobile policy, as well as the Outline of Coverage page, all of which have language stating that there is no coverage where the insured is occupying a vehicle that is not specifically insured under the policy. While such coverage may indeed be excluded for bodily injury and liability, this has no bearing as to UM coverage.
In Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971), the Florida Supreme Court made it clear that whenever an insured is injured by a negligent uninsured/underinsured motorist, the insured has UM coverage under an automobile policy's UM provisions. "They may be pedestrians at the time of such injury, they may be riding in motor vehicles of others or in public conveyances and they may occupy vehicles ... owned by but which are not 'insured automobiles' of named insured. " Id. at 233 (emphasis added); see also Coleman v. Fla. Ins. Guar. Ass'n, Inc., 517 So.2d 686, 689 (Fla. 1988) (same); Divine v. Prudential Prop. & Cas. Ins. Co., 614 So.2d 683, 683 (Fla. 5th DCA 1993) (concluding that an insurer cannot avoid the rule in Mullis simply by altering the definition of who is "insured" under the policy). Put another way, where an insured is injured while occupying an owned vehicle that is not listed on the policy, the insured is "entitled to uninsured motorist coverage even if he would not have been entitled to liability coverage had the accident in question been his fault." Omar v. Allstate Ins. Co., 632 So.2d 214, 215 (Fla. 5th DCA 1994).[6]
GEICO further claims that it would be inequitable to allow Perez to recover UM benefits under the instant automobile policy because Perez separately purchased a motorcycle policy that provides UM coverage for the motorcycle he was riding when the accident occurred. GEICO claims that Perez must elect to receive the UM benefits under his motorcycle policy. GEICO is wrong.
Omar involved nearly the same factual circumstances as this case. In that case, Omar was injured while driving a vehicle that was not listed under the Allstate automobile insurance policies that covered Omar's other vehicles. Though the subject vehicle was covered under a different policy that Omar had purchased with a different insurer, which provided UM benefits, Omar made a UM claim against the Allstate policies. The Fifth District found that Mullis allowed for a UM claim to be made against the Allstate policies, even though Omar had UM coverage on the subject vehicle through a different insurer. Omar, 632 So.2d at 215-16.
For these reasons, GEICO was not entitled to entry of summary judgment on this first ground.
2. The UM rejection form contains a section 627.727(9)(d) exclusion from UM coverage for non-scheduled vehicles
Next, GEICO argues, for the first time on appeal, that Perez's automobile policy *350 does not provide UM coverage for the accident because of an exclusion that is contained within the UM rejection form that was electronically signed when the automobile policy was procured. The form provides, in relevant part:
(Note that there is no coverage under this policy for a person who is injured while occupying a motor vehicle or motorcycle owned by you or a family member who resides with you which is not covered under the liability coverages section of this policy.)
This argument is not well taken for several reasons.
As an initial matter, GEICO waived this issue because it never made any argument with respect to an express UM coverage exclusion for unscheduled vehicles in the lower court. No such argument appears in GEICO's motions for summary judgment. Nor was it argued at the summary judgment hearing. Quite the contrary, at the summary judgment hearing, GEICO argued that, because Perez could only purchase from GEICO a motorcycle policy to cover his motorcycle, "this is not an exclusion scenario ... where there is coverage but for an exclusion."[7] Because GEICO did not raise this issue below, it was waived. See Omar, 632 So.2d at 216 ("There is no mention of an informed, knowing rejection of uninsured motorist coverage [pursuant to section 627.727(9)(d) of the Florida Statutes ] in Allstate's motion and amended motion for summary judgment, nor in its memorandum of law in support of its motions and the pretrial compliance statement. Thus, it appears that this issue was never presented to the trial court. Therefore, this ground cannot support the summary judgment."); Hartford Accident & Indem. Co. v. Coastline Diesel, Inc., 252 So.2d 836, 837 (Fla. 4th DCA 1971) ("The insurer claims that it was not liable for the loss in question because of a specific exclusionary clause in the insurance contract. This basis for relief ... was not raised by appellant in the trial court.... We hold that the effect of the exclusionary clause will not be considered for the first time on appeal.").
Moreover, even if this issue had been properly preserved, GEICO did not present sufficient evidence below that would entitle it to entry of summary judgment. Omar, 632 So.2d at 216-17. While section 627.727(9)(d) of the Florida Statutes (2013) does allow an insurer to offer automobile policies that exclude UM coverage for vehicles that are not listed on the policy, the record is (obviously) devoid of a policy containing the language approved by the Office of Insurance Regulation that the statute requires for such a policy to effectively exclude UM coverage for non-scheduled vehicles. Indeed, Perez's automobile policy contained no UM coverage at all, and GEICO did not proffer a copy of the automobile policy that Perez would have been issued had UM coverage been provided, i.e., presumably containing the statutorily authorized language excluding non-scheduled vehicles from UM coverage.
For these reasons, GEICO was not entitled to entry of summary judgment on this second ground.
3. The electronically signed UM rejection form entitles GEICO to the section 627.727(1) conclusive presumption that Perez rejected UM coverage
Finally, GEICO argues that the Perezes' daughter electronically signed the UM rejection form online on behalf of her father, thus entitling GEICO to the conclusive *351 statutory presumption that Perez rejected UM coverage in the automobile policy.
Section 627.727 provides, in relevant part:
[T]he coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.... The rejection ... shall be made on a form approved by the office. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.....
§ 627.727(1), Fla. Stat. (2013) (emphasis added).
At the summary judgment hearing, the trial court found that even though the instant UM rejection form (identified as M-9-FL (11-96) ) had been approved by Florida's Department of Insurance Regulation, the form failed to comply with section 627.727(1) because the form failed to track the precise language of the statute. Specifically, the trial court noted that the bolded 12-point type of GEICO's UM form included the language "BODILY INJURY LIMITS ," instead of "BODILY INJURY LIABILITY LIMITS ," and the language "PLEASE READ IT CAREFULLY " instead of "PLEASE READ CAREFULLY ." We conclude that the trial court was correct as a matter of law.
Section 627.727(1) sets forth four independent requirements that a UM rejection form must meet before the conclusive presumption applies:
[A]n uninsured motorist rejection form must: (1) be approved by the Florida Insurance Commissioner; (2) explain what uninsured motorist coverage is; (3) discuss the limits that are applicable unless coverage is rejected; and (4) include the following disclaimer as a heading on the form in 12-point bold: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully."
Orion Ins. Co. v. Cox, 681 So.2d 760, 761 (Fla. 4th DCA 1996) ; § 627.727(1), Fla. Stat. (2013). Here, GEICO's UM rejection form complied only with the first three requirements. That the Department approved the form did not obviate section 627.727(1)'s requirement that the disclaimer contain specific language.[8] See Doyle v. Dep't of Bus. Regulation, 794 So.2d 686, 690 (Fla. 1st DCA 2001) (recognizing that *352 a court need not defer to an agency's construction of a statute that it is charged with enforcing "if the language of the statute is clear and therefore not subject to construction").
We realize that this is a harsh result given that, in all material respects, GEICO's UM rejection form complies with the statute, and GEICO has used this Department-approved form over an extended period of time. Nevertheless, section 627.727(1) is unambiguous and unequivocally provides that the conclusive presumption applies only if the form includes the specific, quoted language of the statute. GEICO's form does not contain this language and, as appealing as it would be to make a judicial exception to what the legislature has expressly provided, we are powerless to vary the plain and unambiguous language of the statute. See Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984) ("[C]ourts of this state are 'without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.' " (emphasis omitted) (quoting Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968) ) ).
For these reasons, GEICO was not entitled to entry of summary judgment on this third ground.[9]
B. The trial court's evidentiary rulings during the phase one trial on Perez's oral, knowing rejection of UM coverage and the verdict form
Simply because GEICO was not entitled to a conclusive statutory presumption that Perez had rejected UM coverage, however, did not preclude GEICO from otherwise proving that Perez knowingly rejected UM coverage when he procured the subject automobile policy. Muhammed v. Allstate Ins. Co., 582 So.2d 768, 769 (Fla. 3d DCA 1991) ("[T]he mere fact that the [UM rejection] form actually utilized arguendo departs from the one statutorily provided by section 627.727, Florida Statutes (Supp. 1984) does not preclude a carrier from otherwise demonstrating a knowing rejection of uninsured motorist coverage."); see also Teachers Ins. Co. v. Bollman, 617 So.2d 817, 818 (Fla. 2d DCA 1993) ("The fact that Mrs. Bollman's written rejection was not on a statutorily prescribed form does not undermine its effect, i.e., 'demonstrating a knowing rejection of uninsured motorist coverage.' " (quoting Muhammad, 582 So.2d at 769 ) ). To this end, in the first phase of the trial, GEICO sought to introduce evidence to support its theory that Perez had knowingly rejected UM coverage in writing ; but, the trial court narrowed the phase one trial to whether Perez had made a knowing, oral rejection of UM coverage. Indeed, via the jury instructions and the verdict form, the trial court actually limited the issue to whether Perez had "orally waive[d] the statutory requirement of a written rejection by knowingly rejecting uninsured motorist coverage[.]" With the triable issue phrased in this manner, the trial court, through a series of pre-trial evidentiary rulings, essentially limited all of the evidence introduced during the phase one trial to the April 2013 phone call between Perez and the GEICO
*353 sales representative.[10]
The trial court appears to have based its evidentiary rulings on this Court's prior citation to case law finding that it is "permissible for an insurer to 'avoid the statutorily required [UM] coverage if it proves that the named insured orally waived the statutory requirement of a written rejection by knowingly selecting a lesser limit or by knowingly rejecting UM coverage' " Union Am. Ins. Co. v. Cabrera, 721 So.2d 313, 314 (Fla. 3d DCA 1998) (quoting Chmieloski v. Nat'l Union Fire Ins. Co., 563 So.2d 164, 166 (Fla. 2d DCA 1990) ). Indeed, consistent with the jury instructions, the verdict form given in this case asked the jury, "Did Plaintiff, Ricardo Perez, the named insured orally waive the statutory requirement of a written rejection by knowingly rejecting uninsured motorist coverage?"
Oral waiver of the statutory requirement of a written rejection of UM coverage is, of course, a more nuanced question than a knowing, oral rejection of UM coverage. Our Cabrera case is not entirely clear on this point, particularly as it relates as to an insurer's ability to demonstrate a knowing rejection of UM coverage solely through evidence of an insured's oral rejection of UM coverage at the time the policy is procured.
Fortunately, in this case, we need not reach the validity of either an insured's knowing, oral rejection of UM coverage, or an insured's oral waiver of section 627.727(1)'s written UM rejection requirement. GEICO has never maintained that Perez orally waived the statutory requirement that UM coverage be rejected in writing. It has always been GEICO's position that Perez made a knowing, written rejection of UM coverage after Perez told GEICO's sales representative that he did not want UM coverage during the April 2013 phone call. Indeed, at oral argument, GEICO stated the issue for the jury in this case should be as stated in section 627.727(1), i.e., whether Perez made a written rejection of coverage on behalf of all insureds under the policy. This is a valid theory of defense which GEICO was entitled to support at trial with much of the evidence that the trial court excluded. See Teachers Ins. Co., 617 So.2d at 818 ; Muhammad, 582 So.2d at 769.
Evidence that an insured orally rejected UM coverage at the time an automobile insurance policy was procured is relevant to support an insurer's claim that the insured thereafter signed a UM rejection form, even if the insurer cannot produce the written rejection at trial. See Cabrera, 721 So.2d at 314 ("Although the document itself could not be produced, the insurer adduced testimony at trial that there had been both written and oral rejections of UM coverage."). The same holds true here, even though the instant UM rejection form was insufficient to afford GEICO the conclusive presumption of UM rejection provided in section 627.727(1). Evidence that Perez orally rejected UM coverage during the April 2013 phone call with GEICO's sales representative is relevant to support GEICO's claim that Perez's daughter, on behalf of Perez, electronically signed the instant UM rejection form.
GEICO should be allowed to present to the jury the entire panoply of admissible, relevant evidence to establish its theory that Perez, through his daughter, made a written rejection of UM coverage. This includes evidence with respect to: (i) Perez's understanding of, and familiarity with, UM coverage given his prior dealings with his prior automobile insurer and also with *354 GEICO;[11] (ii) the April 2013 phone call that initiated procurement of the subject automobile policy; (iii) GEICO's practices regarding how UM coverage is normally handled when UM coverage is rejected telephonically; (iv) the steps taken leading up to the UM rejection form being electronically signed with Perez's electronic signature (e.g., the email exchanges between Mrs. Perez's email address and the daughter's email address, the creation of an online GEICO account, the signing of the UM rejection form, and Perez's understanding thereto); (v) the electronically signed UM rejection form; and (vi) GEICO's mailing Perez both a copy of his automobile policy and, at Perez's subsequent request, a copy of the policy's declaration page.[12]
GEICO was also entitled to have the lower court instruct the jury on its theory of the case consistent with the evidence that it presented at trial. See LaTorre By and Through LaTorre v. First Baptist Church of Ojus, Inc., 498 So.2d 455, 456 (Fla. 3d DCA 1986) ("It is well settled that a party is entitled to have the court instruct the jury on his theory of the case where the evidence, even though controverted, supports the theory."). This includes instructing the jury on GEICO's agency theory that the daughter, who was listed as an additional driver on the subject policy, was the online user that electronically signed the UM rejection form on behalf of Perez. See Mercury Ins. Co. of Fla. v. Sherwin, 982 So.2d 1266, 1267 (Fla. 4th DCA 2008) ("The court determined that Louis could not reject coverage where the named insured under the policy was his wife, Lisa. We reverse and hold that where the husband acted on behalf of his wife in securing the insurance policy, his rejection of stacked uninsured motorist coverage was a valid rejection of coverage."). GEICO is entitled to have the jury determine the issue of whether Perez's daughter was acting on Perez's behalf when securing the policy and rejecting UM coverage.
We conclude that GEICO is entitled to a new trial because the trial court erred (i) in not allowing GEICO to introduce probative, admissible evidence to support its valid theory of defense that Perez had knowingly rejected UM coverage in writing, and (ii) in not instructing the jury accordingly.
IV. CONCLUSION
We affirm the trial court's denial of GEICO's summary judgment motions. Because the jury was precluded from hearing relevant evidence on the issue of whether Perez made a knowing, written rejection of UM coverage, though, we reverse the four final judgments on appeal, and remand for a new trial on phase one. The issue for trial on remand will be whether Perez made a knowing, written rejection of UM coverage when procuring the GEICO automobile policy.[13]
*355 Affirmed in part, reversed in part, and remanded for a new trial.

As discussed in more detail, infra , the trial court conducted a bifurcated jury trial. The issue in phase one of the trial was whether GEICO was obligated to provide uninsured/underinsured motorist coverage to Perez, while the issues in phase two were liability for the accident and damages. GEICO appeals the two final judgments entered against it after the jury returned a verdict in favor of Perez at both trial phases, as well as the two cost judgments entered against it with respect thereto.

The blue hyperlink was titled "Uninsured Motorist Option Form - Document M9FL(11-96)."

"[T]he payment of a single premium for UM coverage on one vehicle secures liability insurance for the insured regardless of what vehicle the insured is driving at that the time of an accident with an uninsured motorist; and ... the payment of an additional premium for UM coverage on a second vehicle provides additional UM coverage that supplements the insurance already available under a single coverage, which can be added together with the single coverage to provide a higher payout to the injured insured." Swan v. State Farm Mut. Auto. Ins. Co., 60 So.3d 514, 516 (Fla. 3d DCA 2011) (emphasis omitted). This adding together (or aggregating) of UM policy limits is known as "stacking." Id. Here, had Perez paid a separate premium for UM coverage on each of his three vehicles at a limit equal to the bodily injury liability limits of the policy ($50,000), then Perez would be entitled to "stack" the UM policy limits of the three vehicles ($50,000 each) when making a claim for UM benefits ($150,000). Perez paid no such UM premiums on his automobile policy. Nevertheless, as will be discussed infra , section 627.727(1) of the Florida Statutes requires that the insured receive stacked UM coverage in an automobile policy unless the insured either rejects UM coverage in writing or elects to accept non-stacked UM coverage. Swan, 60 So.3d at 518.

The trial court rejected GEICO's request that the verdict form read: "Did the plaintiff, Ricardo Perez, or someone acting on his behalf knowingly reject stacked and uninsured motorist coverage in connection with this April 15, 2013 purchase of automobile insurance from GEICO General Insurance Company." To this end, the trial court also declined to instruct the jury on agency - based on GEICO's theory that the daughter had signed the UM rejection on behalf of Perez - because the daughter was not a named insured on the automobile policy.

We affirm, without further discussion, all evidentiary rulings made by the trial court during phase two of the trial.

In 1987, in response to the Mullis case, the Florida legislature amended Florida's UM statute to allow insurers issuing motor vehicle liability insurance policies to exclude UM coverage for injuries to insureds occupying a vehicle for which no UM coverage was purchased. See § 627.727(9)(d), Fla. Stat. (2013) ; GEICO v. Douglas, 654 So.2d 118, 120 (Fla. 1995). As discussed in more detail in Section III. A. 2., infra , however, the statute's authorization is unavailing to GEICO under the particular circumstances of this case.

GEICO also argued (incorrectly, as discussed infra ) that an insurer cannot write UM coverage out of an automobile policy for non-scheduled vehicles.

GEICO relies upon Larusso v. Garner, 888 So.2d 712 (Fla. 4th DCA 2004) and Mangual v. State Farm Mutual Automobile Insurance Co., 719 So.2d 981 (Fla. 5th DCA 1998) to support its argument that GEICO was entitled to rely upon the UM rejection form solely because the Department had approved it. Those cases, however, concerned application of section 627.727(9) which, unlike section 627.727(1), does not set forth any specific disclaimer language that a UM rejection form must contain with respect to the various limitations on UM coverage that the insurer may impose in an automobile policy. Therefore, we find that Larusso and Mangual have no application here.

The trial court also found that GEICO's online click-through process of having the insured electronically sign the UM form without having to first open the blue hyperlink rendered the esignature process ambiguous, and did not provide the required notice under section 627.727(1). Given our determination that GEICO is not entitled to the conclusive presumption because the instant UM form failed to track the notice language set forth in section 627.727(1), we need not, and therefore do not, reach this issue.

See section I. C ., supra .

Perez's prior automobile policy with his prior insurer did not contain UM coverage. In April 2013, the prior insurer notified Perez that, because Perez had requested a change in the bodily injury liability limits of the policy, stacked UM coverage was added to the policy. The addition of stacked UM coverage necessarily resulted in an increase in the policy premium. GEICO maintains that these events prompted Perez to then call GEICO about switching his policy to GEICO. The trial court improperly excluded all of this evidence.

During the questioning of Perez, a juror submitted the following question: "Did the plaintiff receive his written policy by regular mail?" The trial court found that this question was not relevant and that to allow the document to come in would be misleading and confusing to the jury. As stated herein, we disagree.

Because we affirm the trial court's evidentiary rulings in phase two of the trial, if on remand, the jury returns a verdict for Perez in the new trial on phase one, the trial court simply may reenter the phase two judgments against GEICO, after recalculating costs.